## BANK v. McVEIGH.

A Federal question is not presented by the decision of the Supreme Court of Appeals of the State of Virginia, that by the general principles of commercial law, if, during the late civil war, an indorser of a promissory note left his residence in loyal territory and went to remain permanently within the Confederate lines before the note matured, a notice of protest left at his former residence was not sufficient to charge him, if his change of residence was known, or by the exercise of reasonable diligence might have been known, to the holder of the note when it matured.

MOTION to dismiss a writ of error to the Supreme Court of Appeals of the State of Virginia.

The Bank of the Old Dominion sued the makers, and W. N. McVeigh, the indorser, of certain promissory notes which were payable at that bank. At the date of the notes the bank had its place of business at the city of Alexandria, Va., and the other parties resided there. Before the paper matured, the forces of the United States had taken possession of that city, which they retained during the rebellion; and the indorser had, with the knowledge of the officers of the bank, gone within the Confederate lines, where his family then was, and where he remained, engaged in business in the city of Richmond, until 1874. The notes were in due time and manner presented at the bank for payment, and, payment not having been made, were protested.

Upon the second trial of the case in the Corporation Court of the city of Alexandria, the controlling question being as to the sufficiency of the notice of dishonor and protest, the proof was, that notice in respect to one of the notes was left at the place of business of the indorser in Alexandria, and that notice as to the others was left at his former dwelling in that city, "in the hands of his white servant." The court charged the jury that "if, on or about the 30th of May, 1861, and prior to the maturity of said notes, W. N. McVeigh, having previously sent his family, went himself within the Confederate lines, with the intention of not returning to Alexandria during its occupation by the United States forces, and remained with them continuously within the Confederate lines throughout the whole period of the war, and until the year 1874, and such absence at the

maturity of said notes, respectively, was known, or by the exercise of reasonable diligence must have been known, to the plaintiff, there is no such evidence of notice of dishonor in the case as is sufficient to fix his liability as indorser, and the jury must find for him as to all except the two notes of May 17 and June 17, as to which notes they will find for the plaintiff."

The jury having found accordingly, judgment was rendered on the verdict, and the bank took the case to the Supreme Court of Appeals of the State of Virginia, where the judgment below having been affirmed, the bank sued out this writ of error.

*Mr. Conway Robinson*, *Mr. Philip Phillips*, and *Mr. William A. Maury* in support of the motion.

*Mr. H. O. Claughton*, contra.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The motion to dismiss this case for want of jurisdiction will be granted upon the authority of *Bethell* v. *Demaret*, 10 Wall. 537; *Delmas* v. *Insurance Company*, 14 id. 661; *Tarver* v. *Keach*, 15 id. 67; *Rockhold* v. *Rockhold et al.*, 92 U. S. 129; *New York Life Insurance Co.* v. *Hendren*, id. 286. All the court below decided was, that by the general principles of commercial law, if, during the late civil war, an indorser of a promissory note abandoned his residence in loyal territory, and went to reside permanently within the Confederate lines before the note matured, a notice of protest left at his former residence in the loyal territory was not sufficient to charge him, if his change of residence was known, or by the exercise of reasonable diligence might have been known, to the holder of the note when it matured. It is true that, upon a former decision of the same cause, something was said in the opinion of the Court of Appeals as to the effect of the ordinance of secession of Virginia upon the rights of the parties, and that upon the last trial in the Corporation Court an effort was made by the plaintiff in error to obtain a ruling upon the constitutionality of that ordinance; but it is equally true that the Corporation Court declined to rule at all upon the question, and that the Court of Appeals, in the opinion filed with the judgment

brought here for review, says: "The court before refused to give any opinion on the constitutionality of the ordinance of secession, as it does now, such question being irrelevant and not involved, as we think, in the decision of the cause. The decision of this court would be the same, whether it held the said ordinance of secession to be constitutional or unconstitutional." A careful examination of the record satisfies us of the correctness of this statement. The case was decided "upon principles of general law alone," and it nowhere appears in the record that the plaintiff in error set up or claimed any "title, right, privilege, or immunity," under the Constitution or authority of the United States, which was denied him by the decision below.

*Writ dismissed.*