### ALLEN *v.* McVEIGH.

1. Where, in an action brought in a court of Virginia against an indorser of promissory notes, payable August, 1861, at Alexandria in that State, the point in controversy being as to the sufficiency of the notices of dishonor, and the court decided in substance that by the general principles of commercial law, if, during the late civil war, he abandoned his residence in loyal territory and went to reside permanently within the Confederate lines before the note matured, a notice left at his former residence was not sufficient to charge him, if his change of residence was known, or by the exercise of reasonable diligence might have been known, to the holder of the note when it matured, — *Held*, that no Federal question was raised by the decision.

2. Where the plaintiff's prayer for instructions relates also to the Virginia ordinance of secession and the proclamations of the President of April, 1861, and Aug. 16, 1861, but, as the case stood upon the evidence, neither of them was involved, and no title, right, privilege, or immunity thereunder was claimed by either party, — *Held*, that the prayer was properly refused; and, the only Federal question thereby sought to be raised having been correctly disposed of, this court cannot consider the other errors assigned.

ERROR to the Supreme Court of Appeals of the State of Virginia.

The case is fully stated in the opinion of the court.

*Mr. Hierome O. Claughton* for the plaintiff in error.

*Mr. Philip Phillips, Mr. W. Hallett Phillips,* and *Mr. William A. Maury* for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a suit against William N. McVeigh, as indorser of two promissory notes, and the matter in dispute is as to the sufficiency of the notices of dishonor.   The notes fell due, one on the 2d and the other on the 23d of August, 1861, at the Exchange Bank of Virginia in Alexandria.   The notary, in his certificate of protest, stated that he had delivered " a notice of

protest to William N. McVeigh by leaving it at his dwelling in the hands of his white servant," and the issue on the trial was as to whether the house at which the notice was left was in fact the dwelling of McVeigh at the time. Upon this point McVeigh testified, in substance, that at some time previous to the 24th of May, 1861, he sent his family to his farm in Culpeper County, Virginia; that he remained at his home in Alexandria until after the military forces of the United States took possession of the city, which was the 24th of May; that on the 30th of May, under a pass from the United States authorities, he left his home, and went within the Confederate lines to join his family, with the intention of not returning so long as the city remained in the possession of the United States, which he supposed would be but a short time; that he left in his house a white woman about seventy years of age, who had been for many years his servant, and three colored servants, who were slaves; that he did not discharge his white servant, but advised her to go to the country; that on leaving he had great doubts whether he would ever see his property in Alexandria again; that he remained with his family in Culpeper until the fall of 1861, when he removed to Richmond and engaged in business there; and that he remained in Richmond until 1874, when he returned with his family to Alexandria.

At the close of the testimony the court, at the request of McVeigh, charged the jury that " if on or about the 30th of May, 1861, and prior to the maturity of the notes sued on, William N. McVeigh, having previously sent his family, went himself within the Confederate military lines with the intention of not returning to Alexandria during its occupation by the United States forces, and accordingly remained with his family continuously within the Confederate military lines throughout the whole period of the war, and did not return to Alexandria with his family until the year 1874; that such absence at the maturity of said notes, respectively, was known, or, by the exercise of reasonable diligence, must have been known, to the Exchange Bank of Virginia, at Alexandria; that at the time of said maturity the armed forces of the United States and of the Confederate States confronted each other on lines immediately intervening between the city of

Alexandria and the said William N. McVeigh, so as to cut off and prevent actual intercourse between the two, and such intervention continued down to the end of the war, the notice of dishonor shown by the notarial certificates of protest is not sufficient to fix the liability of William N. McVeigh as indorser, and the jury must find for him."

This instruction is substantially the same as that considered in Bank v. McVeigh, 98 U. S. 332, and which we held did not present a Federal question. The only difference, even in language, between the instructions in the two cases consists in what is said in this about the establishment and maintenance of the opposing lines of military forces and the prevention of actual intercourse, which was not in the other. No importance was given in the argument, however, to this difference, and it may as well be said now, as it was before, that " All the court below decided was, that by the general principles of commercial law, if, during the late civil war, an indorser of a promissory note abandoned his residence in loyal territory, and went to reside permanently within the Confederate lines before the note matured, a notice of protest left at his former residence in the loyal territory was not sufficient to charge him, if his change of residence was known, or by the exercise of reasonable diligence might have been known, to the holder of the note when it matured." Under the question raised by the charge as given, therefore, we have no jurisdiction.

But the plaintiff asked of the court certain instructions, which were not given, and error is assigned for this. The fourth of these requests presents all the questions relied on, and was as follows: —

" If the jury believe from the evidence that the notes sued on were discounted by the Exchange Bank of Virginia at Alexandria before their maturity, or that they were renewals of notes theretofore discounted ; that at the time of discount the makers, indorser, and indorsee were residents of said city ; that before the maturity of the said notes the Federal forces had taken permanent possession of said city ; that after such possession the indorser, William N. McVeigh, left his residence in said city, with the intention of returning thereto, and went within the Confederate lines to join his family, at the time visit-

ing in the county of Culpeper; that the said indorser, at the time the said notes respectively became due, was within the Confederate lines in adherence to the Southern Confederacy in obedience to the Virginia ordinance of secession, — the court instructs the jury that the said ordinance of secession was of no binding force or obligation; that neither the proclamations of the President of the United States, issued in April, 1861, and Aug. 16, 1861, nor the existence of the war, nor the ordinance of secession of the State of Virginia, obliged the said indorser to be absent from his residence in Alexandria, nor relieved the holder of said notes from giving him notice of the dishonor and protest thereof; that such absence was voluntary, and did not affect the rights and duties of the parties to said notes. And if the jury believe from the evidence that at the time the said notes respectively fell due the said indorser had not abandoned his intention to return to Alexandria, and had not acquired a domicile elsewhere, and that the notes sued on were duly dishonored and protested, and on the day thereof notice of such dishonor and protest was left at the residence of the indorser in Alexandria with his white servant in charge of the same, such notice was sufficient to bind the indorser, and the jury must find for the plaintiff, if they further believe from the evidence that he is the *bona fide* holder of said notes."

The only point presented by this request, not disposed of by the charge as actually given, is that which relates to the ordinance of secession and the proclamations of the President. The plaintiff claimed no " title, right, privilege, or immunity," either under the ordinance or the proclamations; neither did the defendant. The issue in the case was as to the fact of a change of residence by the defendant, not as to his power to make a change. The plaintiff did not claim that by reason of the ordinance, or the proclamation, or even the existence of actual war, the defendant was prevented from abandoning his home in Alexandria and taking up another inside the Confederate lines. Neither did the defendant claim that the ordinance, the proclamation, or the war, of themselves, made the notice left at his former home insufficient. The ultimate fact to be determined was whether, when the notice was left at the house formerly occupied by the defendant, it was left at his place of residence.

As the case stood upon the evidence, the ordinance of secession and the proclamations were in no way involved. The plaintiff claimed nothing under them; neither did the defendant. The charge in respect to them, as requested, was therefore immaterial, and was properly refused. As this presented the only Federal question in the case, and it was correctly disposed of, we cannot consider the other errors assigned. *Murdock* v. *City of Memphis*, 20 Wall. 590.

*Judgment affirmed.*