GRAME, Executor, *v.* MUTUAL ASSURANCE COMPANY OF VIRGINIA.

GODDIN, Executor, *v.* SAME.

IN ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

Argued November 18, 1884.—Decided November 19, 1884.

Whether the destruction of a building by fire, communicated from buildings burned by the Confederate forces on leaving Richmond, was covered by a policy which excepted losses resulting from riots, civil commotions, insurrections, or invasions of a foreign enemy, is not a Federal question but one of general law, the decision of which by a State court is not reviewable here.

This was a motion to dismiss the writs of error on the ground that no federal question was presented, and that the court was without jurisdiction.

*Mr. Assistant Attorney-General Maury* and *Mr. George F. Edmunds* for the motion.

*Mr. Enoch Totten, Mr. William B. Webb,* and *Mr. John Howard,* opposing.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

We have no jurisdiction in these cases. The suits were brought on policies issued by the Mutual Assurance Society of Virginia, one to John Grame, and the other to Seymour P. Vial, insuring certain buildings of the respective parties against such losses or damages as might be occasioned by accidental fire or lightning, but expressly excepting from the risks losses which resulted from riots, civil commotions, insurrections, or from the invasion of a foreign enemy. The defence was that the loss was not occasioned by an accidental fire, but that it resulted from a fire purposely set by the Confederate authorities on the evacuation of Richmond in April, 1865, as a war measure, for the destruction of tobacco and military stores which were liable to capture by the forces of the United States. Neither party set up or claimed in the pleadings "any title, right, privilege or immunity . . . under the Constitution, or any treaty or statute of, or commission held or authority exercised under, the United States."

On the trial it was conceded that the buildings were destroyed in the progress of a fire purposely set by the order of the Confederate States Government on the evacuation of Richmond "in pursuance of its laws and policy to destroy military stores and tobacco which were liable to capture by the forces of the United States." The buildings insured were not actually set on fire by the Confederate authorities, but they caught from a fire that was so set. On these facts the Supreme Court of Appeals of Virginia decided that the society was not liable under its policies. In the opinion filed the court said: "It is plain that this fire, from which the appellants' buildings were burned, resulted from the act of these military officers, acting under express orders and by virtue of an act of Congress of the Confederate States of America. Certainly it cannot be said that the fire which consumed the buildings of the appellants was an accidental fire or a fire by lightning. The question is, how did such fire result, and how was it occasioned? If it was occasioned by accident or by lightning, the company is responsible. It is not responsible if occasioned by or resulted from riots, insurrection, civil commotion, or the invasion of a foreign enemy." Then, after considering the facts, it is further said : " I suppose

that 'civil commotion' must necessarily arise where there is civil war. It is true there may be civil commotion without civil war, but certainly there cannot be civil war without civil commotion, and I think no man who lived in the late decade would say that there was no civil commotion between 1861 and 1865. But the company not only protected itself against liability for loss occasioned by riots, insurrection, and civil commotions, but against the 'invasion of a foreign enemy.' In the light of history and of facts, familiar to every man who opens his eyes and sees material facts before him, is it not plain that the late war was a war of invasion, and that it was the invasion of an enemy, and that it was the invasion of 'a foreign enemy'?" And again: "Now, many authorities and opinions might be quoted to the same effect, but, I think, those already referred to are sufficient to show that the Confederate States of America were, certainly as long as the war lasted, a separate and independent government and foreign to the United States of America."

It is upon these expressions in the opinion of the court, and others like them, that our jurisdiction is supposed to rest, but it must be borne in mind that the only question for decision was whether the society was liable on its policies for losses which resulted from such a fire as that in which the insured buildings were destroyed. The inquiry was not as to the rights of the respective parties under the Constitution and laws of the United States, but as to what was meant by certain words used in the contracts they had entered into; not whether secession was constitutional, and the Confederate Government, which grew out of it, a lawful government, having authority to order the fire to be set; but whether that government did so order, and, if it did, whether the fire which followed was a fire which resulted from civil commotion, insurrections, or the invasion of a foreign enemy, within the meaning of those terms as used in the policies sued on; not whether the entry of the forces of the United States into Richmond was in fact the invasion of a foreign enemy, but only whether it was so in its legal effect upon the rights of the parties under their contracts. These are clearly questions of general, not Federal law, and such being

the case, the decision of them by the Court of Appeals is not reviewable here.

*The motions to dismiss are granted.*