# CHICAGO AND ALTON RAILROAD *v.* WIGGINS FERRY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Argued October 22, 25, 1886. — Decided January 10, 1877.

The constitutional requirement that " full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state " implies that the public acts of every state shall be given the same effect by the courts of another state that they have by law and usage at home.

Whenever it becomes necessary under Article IV, § 1 of the Constitution for a court of one state, in order to give faith and effect to a public act of another state, to ascertain what effect it has in that state, the law of the other state must be proved as a fact.

The courts of the United States, when exercising their original jurisdiction, take notice without proof, of the laws of the several states of the United States; but in this court, when acting under its appellate jurisdiction, whatever was matter of fact in the state court whose judgment or decree is under review, is matter of fact here.

When the decision of a state court holding a contract valid or void is made upon the general principles by which courts determine whether a consideration is good or bad on principles of public policy, no question arises under the provision of the Constitution respecting the faith and credit to be given in each state to the public acts, records, and judicial proceedings of another state, and this court cannot review the decision.

In order to give this court jurisdiction to review a decision of a state court respecting the power of a corporation of another state to make contracts it is not sufficient to aver in the pleadings that whatever force might be given to it in the court of the forum, it was beyond the powers of the corporation under its act of incorporation as construed by the courts of the state incorporating it; but it must appear affirmatively in the record that the facts as presented for adjudication, made it necessary for the court to consider and give effect to the act of incorporation in view of the peculiar jurisprudence of the state enacting it rather than the general law of the land.

This was a motion to dismiss for want of jurisdiction. It was submitted on the 19th April, 1886, at the last term of court, and was ordered to be argued at the hearing on the merits. The case is stated in the opinion of the court.

*Mr. Henry Hitchcock* for the motion. *Mr. G. A. Finkeln-burg* was with him on the brief.

*Mr. C. Beckwith* opposing.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The Federal question which it is claimed arises on this record is, whether the Supreme Court of Missouri in its judgment gave "full faith and credit" "to the public acts, records, and judicial proceedings" of Illinois.

The facts are these: The Wiggins Ferry Company was in-

corporated by the state of Illinois in 1853, and given the exclusive and perpetual right of maintaining and operating a ferry across the Mississippi River between its own lands in East St. Louis, on the Illinois side, and St. Louis in Missouri. It owned Bloody Island and substantially controlled two miles and a half of ferry landing on the Illinois shore.

The Chicago and Alton Railroad Company is likewise an Illinois corporation, having authority to own and operate a railroad between Chicago and Bloody Island, opposite the city of St. Louis, and to "take, use, and make arrangements for the transportation of freight and passengers carried, or to be carried, upon said railroad, or otherwise, . . . to St. Louis, Missouri, and for this purpose to construct, own, and use such boat or boats as may be necessary."

The Alton and St. Louis Railroad Company was also an Illinois railroad corporation, authorized to construct and operate a railroad from Alton, Illinois, to any point opposite St. Louis. On the 28th of April, 1864, this company entered into a contract with the Wiggins Ferry Company, by which, among other things, the ferry company agreed "to furnish and maintain good and convenient wharf boats and steam ferry boats to do with promptness and despatch all the ferrying required for the transit of passengers and freight coming from or going to said railroad (or the assignee hereinafter mentioned) over the river," at reasonable rates of ferriage; and the railroad company covenanted and agreed that it would "always employ the said ferry to transport across the said river all persons and property which may be taken across the said river, either way, to or from the Illinois shore, either for the purpose of being transported on said railroad, or having been brought to the said river, Mississippi, upon said railroad. So that the said ferry company, its legal representatives or assigns, owners of the said ferry, shall have the profits of the transportation of all such passengers, persons and property, taken across said river either way by said railroad company; and that no other than the Wiggins Ferry shall ever, at any time, be employed by the said party of the second part, or the assignee herein mentioned, to cross any passengers or freight coming or going on said road."

And it was also agreed and understood that the Alton and St. Louis company should have the right to transfer and assign the agreement to the Chicago and Alton company, in which event all the covenants, stipulations, and agreements therein contained should be as binding on the said Chicago and Alton company as on the Alton and St. Louis company.

On the same day that the contract was entered into the Alton and St. Louis company transferred to the Chicago and Alton company all its right, title, and interest in and to the lands, tenements, and easements mentioned therein, and the Chicago and Alton company became bound to the ferry company in all respects the same as the Alton and St. Louis company was.

This suit was brought by the ferry company in a state court of Missouri against the Chicago and Alton company to recover damages for not employing the ferry company for the transportation of persons and property across the river, as by the contract it was bound to do. The railroad company set up by way of defence, among other things, that "it had no power or authority to make or enter into any agreement whatever, perpetually obliging itself . . . not to cross persons and property, nor not to employ others to do so in the manner alleged in the petition; and that, if the provisions of said articles of agreement contain, by construction, any such provision, the same were and are in violation of the laws of the state of Illinois, and contrary to the public policy thereof, and are void and of no effect."

The answer further alleged that the railroad company, at the time of the transfer of the contract to it, "was a public common carrier as a railroad company, duly incorporated by law, with power and right to construct and operate its railroad, and to transport persons, passengers, freight, and property to and from the city of St. Louis, in the state of Missouri, across and over said river, and on or over its railroad, as the public interest required; that it was and still is the legal right and duty of defendant to furnish and supply the mode and means of transportation needed and required from time to time by the public welfare for passengers and property to

and from said city over said river, and to, on, and over defendant's railroad; that the public welfare and the necessities of shippers of property and freight to and over said railroad, and to and from said city, required that certain freights and property, to be transported by defendant to and from said city, should be transported by it to and from said city across said river, and to and from and along defendant's railroad, in the cars in which it might be, and over and across said river, without breaking bulk and without being removed from such cars, and without being taken by hand or by wagons or other appliances, in packages, from or to the cars, from or to ferryboats, to be ferried across said river; and that since said assignment other and improved modes of transportation across said river, without breaking bulk, and at other points on said river opposite the city of St. Louis, were and have been provided and established, and it was and became the duty of defendant, as such common carrier, to accommodate the public by the use of such other modes of transportation; and that any provision of said contract which would prohibit defendant from using the same for the benefit and convenience of the public was and is against public policy and void, and defendant was not and is not bound thereby."

Upon the trial the statutes under which the railroad company was incorporated and from which it derived its corporate powers were offered in evidence. They confer upon the company all the usual powers of railroad corporations, and, either expressly or by implication, subject it to corresponding obligations to the public. No testimony was offered, so far as the record discloses, to show that the courts of Illinois had decided, or that it had been established by law or usage in that state, that this corporation, or any other having similar powers, could not make such a contract as had been entered into.

After the evidence was all in, the railroad company asked the court to rule, among other things, as follows:

"If, at the time the contract sued on was made and was assigned to defendant, the plaintiff was a common ferry, incorporated under the laws of Illinois, with power to have and use a ferry within limits opposite to a portion only of the

city of St. Louis, and the Alton and St. Louis Railroad Company was a common carrier, incorporated under the laws of Illinois, in evidence, with authority and franchise to have and to use a railroad in said state to a point opposite to the city of St. Louis, Missouri, and defendant was a common carrier, incorporated under the laws of Illinois, in evidence, with franchises and authority to have and use a railroad from Chicago, by way of Alton, in said state, to the Mississippi River, opposite to said city of St. Louis, and carry persons and property to and from St. Louis, and to and from and over such railroad, and to have or use boats for such purpose, then the provisions of said contract between plaintiff and the Alton and St. Louis Railroad Company, that said railroad company would always employ plaintiff or its ferry to transport across the Mississippi River all persons and property which might be taken across said river, either way, to or from the Illinois shore, either for the purpose of being transported on its railroad, or having been brought to said river on said road, so that plaintiff, its representatives or assigns, should have the profits of the transportation of all such persons, passengers, and property taken across the river either way, by said Alton and St. Louis Railroad Company, and that no other than plaintiff (or its ferry) should ever, at any time, be employed by said Alton and St. Louis Railroad Company, or the assignee therein mentioned, to cross any passengers or freight coming or going on said road, were and are illegal, and defendant had no legal right or authority to bind itself to comply with or perform the same, and plaintiff cannot recover herein for non-performance thereof by defendant."

There were other requests of a similar character, but this contains the substance of all that was asked, so far as the questions for our consideration are concerned. These requests were refused, but the trial court did rule that the railroad company "did not covenant or contract that all persons and property coming on its road to St. Louis, or going from St. Louis to be carried on its road, should be crossed over the Mississippi River by plaintiff, or at plaintiff's ferry, but only such as said railroad company, or its assignee, should employ or procure the

ferriage for or have ferried; and that if other persons than . . . the defendant caused, employed, did, or procured the ferriage or crossing over said river of persons or property coming on the road of . . . defendant to St. Louis, or going from St. Louis to be carried on said road, by other means or ferry than plaintiff or its ferry, defendant is not liable therefor, and defendant was not bound to cause or procure such persons or property to be crossed at plaintiff's ferry." The court also ruled that the contract was not "void as being in restraint of trade," nor "as being beyond the powers of the corporations parties thereto," "nor as beyond the powers of the Chicago and Alton Railroad Company to become the assignee thereof and be bound thereby," nor "as being contrary to public policy."

Under these and other instructions, not important for the purposes of the present inquiry, the cause was sent to a referee to take testimony and report the damages. The referee in his report construed the contract to mean that "where the defendant received and billed freights for carriage over its own road at places or for destinations beyond the termini of its road, so that a ferry had to be used to transfer the freights between the city of St. Louis and the Illinois shore, it was the duty of the defendant, whether acting as carrier or forwarder, to give the ferriage to the plaintiff, and good faith required the defendant to conform its acts and contracts of carriage to this obligation." He then said: "If the contract has the above scope and meaning, I am convinced that the defendant has not acted in good faith towards the plaintiff;" and the damages were found and reported on this theory of the case.

The trial court confirmed the referee's report and gave judgment accordingly. The case was then taken to the St. Louis Court of Appeals, where the judgment of the trial court was reversed, because, in its opinion, the referee did not proceed on a correct legal theory and held the railroad company too strictly to the letter of the contract, without looking sufficiently to the facts surrounding it when made. This judgment of the Court of Appeals was reversed, on appeal, by the Supreme Court of the state, and that of the trial court affirmed,

on the ground that the contract was interpreted correctly by that court, and that, being so interpreted, it was not "*ultra vires*, condemned by public policy or in restraint of trade." To reverse that judgment this writ of error was brought on the ground that full faith and credit was not given to the acts of incorporation of the railroad company, construed in the light of the judicial decisions and the accepted public law of Illinois.

A motion to dismiss for want of jurisdiction was made at the last term and continued for hearing with the case on its merits.

This motion is first to be considered. The railroad company set up in its answer, as a defence to the action, that it had no authority to make the contract sued on, and in support of this defence put in evidence its Illinois acts of incorporation. Without doubt the constitutional requirement, Art. IV, § 1, that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," implies that the public acts of every state shall be given the same effect by the courts of another state that they have by law and usage at home. This is clearly the logical result of the principles announced as early as 1813 in *Mills* v. *Duryee*, 7 Cranch, 481, and steadily adhered to ever since. The claim of the railroad company is, that by law and usage in Illinois the operative effect of its charter in that state is to make such a contract as that now sued on *ultra vires*.

Whenever it becomes necessary under this requirement of the Constitution for a court of one state, in order to give faith and credit to a public act of another state, to ascertain what effect it has in that state, the law of that state must be proved as a fact. No court of a state is charged with knowledge of the laws of another state; but such laws are in that court matters of fact, which, like other facts, must be proved before they can be acted upon. This court, and the other courts of the United States, when exercising their original jurisdiction, take notice, without proof, of the laws of the several states of the United States; but in this court, when acting under its appellate jurisdiction, whatever was matter of fact in the court

whose judgment or decree is under review, is matter of fact here. This was expressly decided in *Hanley* v. *Donoghue*, 116 U. S. 1, in respect to the faith and credit to be given by the courts of one state to the judgments of the courts of another state, and it is equally applicable to the faith and credit due in one state to the public acts of another.

Whether the charter of this company, in its operation on the contract now in suit, had any different effect in Illinois from what it would have, according to the principles of general law which govern like charters and like contracts, in Missouri and elsewhere throughout the country, was, under this rule, a question of fact in the Missouri court, as to which no testimony whatever was offered. The case from the beginning to the end, both in the pleadings and in the requests for rulings, seems to have been considered by the parties and by the court as involving questions of general law only, which were not at all dependent upon anything peculiar to the jurisprudence of Illinois. Thus, while in the answer it is alleged, in effect, that the contract is " in violation of the laws of the state of Illinois and contrary to the public policy thereof," no proof was offered to support the averment, and the whole case was made to rest, so far as the testimony was concerned, on the further general allegation that the contract " was and is contrary to public policy and void." So, in the requests for findings, no special reliance was had on any peculiar law or usage in Illinois, but on the general claim that the contract " was illegal, and the defendant had no legal right or authority to bind itself to comply with and perform the same." And in the trial court the ruling was that the contract was " not void as being in restraint of trade," nor " as being beyond the powers of the corporations parties thereto," nor " as beyond the power of the Chicago and Alton Railroad Company to become the assignee thereof, and be bound thereby," nor " as being contrary to public policy." In the Supreme Court, whose judgment we are asked to review, the ruling and decision was even more general, for it was there held that the contract as interpreted was not " *ultra vires*, condemned by public policy or in restraint of trade." It thus appears con-

clusively, as we think, that both the parties and the court understood, as they certainly might from the way this case was presented, that the decision was to be made, not upon anything peculiar to the state of Illinois, but upon the general law of the land applicable to the facts established by the evidence. Such evidently was the ground of the decision, and that being so it is well settled we have no power to bring it under review. The decision would have been the same upon the case as made, whether the Constitution had contained the provision relied on or not. *Bethell* v. *Demaret*, 10 Wall. 537; *West Tennessee Bank* v. *Citizens' Bank*, 13 Wall. 432; *Delmas* v. *Insurance Co.*, 14 Wall. 661, in which it was expressly held that this court cannot review the decision of a state court holding a contract valid or void when "made upon the general principles by which courts determine whether a consideration is good or bad on principles of public policy." *Tarver* v. *Keach*, 15 Wall. 67; *Rockhold* v. *Rockhold*, 92 U. S. 129; *New York Life Ins. Co.* v. *Hendren*, 98 U. S. 286; *United States* v. *Thompson*, 93 U. S. 586; *Bank* v. *McVeigh*, 98 U. S. 332; *Dugger* v. *Bocock*, 104 U. S. 596, 601; *Allen* v. *McVeigh*, 107 U. S. 433; *San Francisco* v. *Scott*, 111 U. S. 768; *Grame* v. *Insurance Co.*, 112 U. S. 273. It is not enough to give us jurisdiction to say in the pleadings, or elsewhere in the course of the proceedings, that the contract, whatever it might be in Missouri, was beyond the powers of the company under its acts of incorporation as they were construed and given effect by law and usage in Illinois. It must somehow be made to appear on the face of the record that the facts as they were actually presented for adjudication made it necessary for the court to consider and give effect to the act of incorporation in view of some peculiar jurisprudence of Illinois rather than the general law of the land. That, as we have seen, was not done in this case. Consequently we have no jurisdiction, and the motion to dismiss is granted.

*Dismissed.*

Mr. Justice Matthews did not sit in this case.