# Richmond.

## ALEXANDRIA SAVINGS INSTITUTION v. McVEIGH.

### NOVEMBER 17th, 1887.

1. NEGOTIABLE INSTRUMENTS—*Notice of protest—State of war.*—In suit against endorser of negotiable note, it appeared that defendant, at and for a time prior to maturity and protest of note, was with his family within the Confederate lines because of the presence of the Federal army in the city of his residence, and did not return until the close of the war. Notice of protest was left with the servant in charge of his house in said city:

HELD:

> Not to be sufficient to fix his liability as such endorser, if defendant's absence was, or might, by reasonable diligence, have been known to the holder of the note. *McVeigh* v. *Bank*, 26 Gratt., 785.

2. APPELLATE COURT—*First appeal—Second appeal.*—It is the well settled rule of this court that a question which has been decided upon the first appeal in any cause, cannot be reviewed or reversed upon any subsequent appeal in the same cause. *Stuart & Palmer* v. *Preston*, 80 Va., 625.

3. INSTRUCTIONS—*Federal questions.*—The court will not give instructions injecting irrelevant federal questions into the case. *Bank* v. *McVeigh*, 98 U. S., 332.

Error to judgment of corporation court of Alexandria rendered September 25th, 1884, in an action at law wherein the Alexandria Savings Institution is plaintiff and Wm. N. McVeigh is defendant. The object of the suit is to charge him with liability for the payment of a negotiable note as endorser, and the question involved is the sufficiency of notice of the dishonor and protest of the note. Against the plaintiff's objection the court gave instructions to the jury on the defend-

ant's motion; to which ruling the plaintiff excepted. Verdict and judgment were for the defendant, and the plaintiff obtained a writ of error. Opinion states the case.

*H. O. Claughton,* for plaintiff in error.

*S. F. Beach,* for defendant in error.

RICHARDSON, J., delivered the opinion of the court.

This case was before this court on a former writ of error, at its March term, 1880. The origin and history of the case, briefly stated, is this: In 1871, the Alexandria Savings Institution brought its action of debt in the corporation court of the city of Alexandria against James H. McVeigh and Edgar T. McVeigh, late copartners, trading under the firm-name of J. H. McVeigh & Son, and William N. McVeigh. The action was founded on a negotiable note for $1,200, made April 29th, 1861, by said J. H. McVeigh & Son, payable to the order of William N. McVeigh, ninety days after the date thereof, at the Branch Exchange Bank of Virginia at Alexandria; which note was endorsed by the said William N. McVeigh to the plaintiff. At the time of the making and negotiating of the note, all the parties resided in the city of Alexandria.

At the commencement of the late war, and only a very short time previous to the occupation of the city of Alexandria by the Federal army, the defendant, William N. McVeigh, sent his family to his farm in the county of Culpeper; and a day or two after said occupation, he left said city and joined his family in Culpeper, within the Confederate lines, leaving his residence, with his furniture and most of the family wardrobe, in charge of an old family servant, a white woman, and his colored servants. He did not expect to return while the Federal authorities held possession of the city of Alexandria, which he expected would be only a short time. He and his family

remained at his farm in Culpeper until the fall of 1861, when he removed to the city of Richmond, where, with his family, he remained until the close of the war and for some years thereafter. During the war, in 1863 or 1864, his dwelling-house in the city of Alexandria was sold, his household broken up, and the place taken possession of by the purchasers. After he left the city of Alexandria, one Robert Crupper attended to business for him in that city. All of these facts were known to the plaintiff.

At the first trial in the court below, the plaintiff asked for two instructions, founded upon the theory of the sufficiency of the facts in evidence to hold the defendant, W. N. McVeigh, liable as endorser; and the court gave the instructions as asked for. The defendant insisting upon the insufficiency of the facts to so hold him liable, asked the court to give to the jury one instruction, which was refused; and the defendant, W. N. McVeigh, excepted as well to the refusal of the court to give the instruction asked for by him as to the action of the court in giving the instructions asked for by the plaintiff. The jury found a verdict for the plaintiff, and the court gave judgment accordingly: whereupon W. N. McVeigh applied for and obtained a writ of error and *supersedeas*. And this court, at its March term, 1880, reversed and annulled said judgment, and remanded the cause for a new trial in accordance with specific directions set forth in the order of reversal.

After the case went back there was another trial, at which (the facts being the same as on the former trial,) the plaintiff asked the court to instruct the jury as follows:

"1st. If the jury believe from the evidence that at the maturity and dishonor of the note sued on, the defendant, William N. McVeigh, had a residence in the city of Alexandria, although he was absent at the time within the Confederate lines, under a pass from the Federal authorities, then in possession of the city of Alexandria, and although hostilities were flagrant between the United States and Confederate

States, and notwithstanding the proclamations of the president of the United States, dated respectively April the 15th, 19th and 27th, 1861, the plaintiff, under the said proclamations, *had the right* to bind the said endorser by notice of the fact of demand and dishonor of the said note, and if the jury further believe from the evidence that notice of said demand and dishonor was, on the day of the date thereof, left at the residence of the said defendant in Alexandria, with the white servant in charge thereof, such notice was sufficient to bind the said defendant as endorser, and the jury must find for the plaintiff."

"2nd. If the jury find from the evidence that notice of the demand and dishonor of the note sued on was left on the day of the date thereof, at the residence of the defendant, William N. McVeigh, with his white servant in charge thereof, the court instructs the jury that the plaintiff has the right, under the proclamations of the president of the United States issued respectively on the 15th, 19th and 27th days of April, 1861, to bind the endorser by such notice of the said demand and dishonor, and that neither the said proclamation, nor the existence of the war, nor the absence of the defendant from his residence, or either of the said facts, required the plaintiff to give the defendant further notice of such demand and dishonor after the close of the war."

But the court refused to give these instructions or either of them, and the plaintiff excepted, and thereupon, on the motion of the defendant, the court gave to the jury the following instructions:

"1st. If at the maturity and protest of the note sued on, and prior thereto, Wm. N. McVeigh, with his family, was absent within the Confederate lines, and this was known, or by the exercise of reasonable diligence, might have been known to the holder, and if such absence on the part of said McVeigh continued until the close of the war, then the notice of protest left with his white servant as stated in the notary's certificate, is not sufficient under the circumstances to fix him with the

liabilities of an endorser, and they must find the issue for the defendant."

" 2nd. If the branch of the Exchange Bank at Alexandria was the agent of the plaintiff for the collection of the note at its maturity, and as such agent, caused to be made and given the protest and notice offered in evidence, the knowledge of the Exchange Bank, so far as it effects the validity of said notice, is to be imputed to the plaintiff, and the plaintiff is bound by it." To the granting of each of which instructions the plaintiff excepted. The jury returned a verdict for the defendant; whereupon the plaintiff moved to set the verdict aside and for a new trial on the grounds of error in granting the defendant's instructions, and in refusing the plaintiff's instructions, and because the verdict was contrary to the evidence, but the court denied the motion, and the plaintiff again excepted. And the court gave judgment according to the finding of the jury; and the plaintiff obtained a writ of error.

The case is within a very narrow compass. We have seen that on the first trial in the court below, verdict and judgment were for the plaintiff; that on exceptions taken by the defendant, this court, on writ of error, reversed the judgment and remanded the cause for a new trial, with directions to the trial court.

At the first trial, the defendant asked for, and the court refused this instruction:

" If at maturity and protest of said note, and prior thereto, Wm. N. McVeigh, with his family, were absent within the Confederate lines, where notice of protest could not legally be sent them, and this was known to the plaintiff, and if such absence on the part of McVeigh continued till the close of the war, with knowledge also of the plaintiff's that during his absence his former residence was sold, and his household establishment broken up, then notice of protest left with his white servant, as stated in the notary's certificate, is not sufficient,

under the circumstances, to fix him with the liabilities of an endorser, and they must find the issue for him."

In delivering the opinion of this court reversing the judgment of the lower court, rendered at the first trial, Burks, J., commenting on this instruction, and the refusal of the trial court to give it, said: "this instruction in the main, propounds the law correctly, I think, as determined by the decisions already referred to, but there are some expressions in it which might perhaps mislead the jury. It is not plain what was intended by the language, 'where notice of protest could not legally be sent them.' It may have been intended as an affirmation by the court, as matter of law, that notice could not be legally sent to McVeigh during the war and while he was within the Confederate lines, or it may have been designed as a direction to the jury that such a deduction might be drawn by them, or it may possibly have been employed, in the connection in which it is used, as merely indicating McVeigh's location during hostilities. It is not clear what was intended by it. So, it is not perceived, how the knowledge of the plaintiff, that during McVeigh's absence 'his former residence was sold and his household establishment broken up,' affected the sufficiency of the notice given prior to the acquisition of such knowledge. Such knowledge would seem to be a circumstance not involved in the issue. While the instruction was open to the objections pointed out, it was in the main correct, and although it might have been error to have given it as asked for, it was equally error to refuse it altogether; for the refusal, under the circumstances, was calculated to mislead the jury. Though an instruction as asked is not wholly correct, yet if the general refusal of it may mislead the jury, the court should either accompany the refusal with an explanation to the jury, or should give them an instruction stating the correct proposition," referring to *Peshine* v. *Shepperson*, 17 Gratt., 472; *Balt. & Ohio R. R. Co.* v. *Polly Woods*, 14 Gratt., 448;

*Rosenbaum* v. *Weeden, Johnson & Co.*, 18 Gratt. 785; *Ward* v. *Churn, Id.*, 801; *Womack* v. *Circle*, 29 Gratt., 192, 207. And Judge Burks proceeds: "I am of opinion therefore to reverse the judgment of the corporation court of the city of Alexandria, set aside the verdict of the jury, and remand the cause for a new trial, and if the evidence shall be substantially the same as on the former trial, and the defendant asks for an instruction in conformity with the views expressed in this opinion, to direct that such instruction be given."

The order of reversal contains the directions indicated in the opinion. It is not pretended that the evidence on the second trial was in any material particular different from what it was on the first trial. The sole point of controversy in both trials was as to the sufficiency of the notice of demand, dishonor, and protest to bind the defendant as endorser of the note sued on— hence, at the last trial the defendant, omitting the doubtful language in the instruction asked for on the first trial, as pointed out by Judge Burks in his opinion, asked for an instruction in exact compliance with the mandate of this court in its order reversing the judgment rendered by the court below on the first trial, and the court below gave the instruction as asked for; the result of which was a verdict and judgment for the defendant. That the trial court did not err in giving said instructions for the defendant at the second trial, or in giving either of them, is made manifest by the ruling of this court when the case was formally here. And in the light of that ruling, as well as of former decisions of this court involving precisely the point decided, it is clear that the verdict and judgment on the second trial was right, and that the court below did not err in refusing the plaintiff's motion to set aside the verdict and grant a new trial. See *McVeigh* v. *Bank of the Old Dominion*, 26 Gratt., 785; *Bank of the Old Dominion* v. *McVeigh*, 29 Gratt., 546; *McVeigh* v. *Allen, Id.*, 588.

The former writ of error brought the whole case up to this court. Then as now, the single point in controversy was the

sufficiency of the notice of protest. This court then settled the law on that question, and the evidence at the second trial being the same as at the first trial, the former ruling of this court became the law of the case in all subsequent proceedings therein. Such is the well established rule, and its justness and propriety is unquestionable. If the rule were otherwise there could be no end of litigation. Hence, when, upon appeal or writ of error, a question in the cause has been decided by this court, that decision is final and irreversable, and cannot be re-examined or changed upon a subsequent appeal or writ of error in the same case; and this is so even though the court were satisfied that its former decision was erroneous and wished to change it. See *Cahoon's Case*, 21 Gratt., 822; *Campbell's Ex'or* v. *Campbell's Ex'ors*, 22 Gratt., 649; *Perry* v. *Little Rock, &c., R. R. Co.*, 44 Ark., 383; *Supervisors* v. *Kennicott*, 4 Otto., 498, and numerous other cases. In the last-named case, Chief Justice Waite, speaking for the whole court, said: "It is settled in this court that whatever is decided here upon an appeal cannot be re-examined in a subsequent appeal of the same suit; such subsequent appeal brings up for consideration the proceedings of the circuit court after the mandate of this court."

But it will be observed that the instructions asked for by the plaintiff, at the second trial, were framed with the view of injecting into the case a Federal question. In other respects, the instructions are substantially the same as those asked for by the plaintiff and given by the court on the first trial. And it is argued that this court, in holding the notice of dishonor and protest of the note sued on insufficient, erred as to one of the legal effects of the facts shown to exist at the date of the protest; erred in supposing that by reason of the facts proved the holder of the note and the endorser stood to each other in the relation of public enemies; and this insistence is founded upon the decision of the supreme court of the United States in *Matthews* v. *McStea*, 91 U. S., 7, and *Bond* v. *Moore*, 93 U. S., 593. And it is also argued that there is no analogy between

this case and that of *Mc Veigh* v. *The Bank of the Old Dominion,* so far as the question of jurisdiction is concerned; that in the latter the Federal question was not distinctly raised at the trial, and althought it was fully discussed in the opinion of the court, it was expressly stated therein that the judgment of the court would have been the same, although the views held upon the Federal question had been the reverse of those expressed in the opinion, and that it was upon this ground that in the case of the *Bank of the Old Dominion* v. *Mc Veigh*, 98 U. S., 332, was dismissed for want of jurisdiction.

It is useless to enter into a discussion of the Federal question sought to be raised by the instructions asked for by the plaintiff, and refused by the court below, as the matter thus sought to be introduced into the case was and is entirely irrelevant and foreign to the issue. For the same reason, it is not necessary to discuss the legal effect of the proclamations, respectively, of the president of the United States referred to in said instructions. It may be remarked, however, that the *Bank of the Old Dominion* v. *Mc Veigh*, 98 U. S., 332, by no means sanctions the effort to obtrude an irrelevant Federal question into this case. When that case went from this court to the supreme court of the United States, the writ of error was dismissed for want of jurisdiction. This court had said in that case, when it was here: "The court before refused to give any opinion on the constitutionality of the ordinance of secession, as it does now, such question being irrelevant and not involved, as we think, in the decision of the cause. The decision of this court would be the same, whether it held the said ordinance of secession to be constitutional or unconstitutional." After quoting this passage from the opinion of this court, Chief Justice Waite concluded his opinion with this remark: "A careful examination of the record satisfies us of the correctness of this statement. The case was decided 'upon principles of general law alone,' and it nowhere appears in the record that the plaintiff in error set up or claimed any

'title, right, privilege, or immunity' under the constitution or authority of the United States, which was denied him by the decision below."

The same is true in this case; for in the first trial in the court below, the plaintiff made no effort to raise the Federal question now insisted on, and the court below, though upon a mistaken apprehension, and this court, when the case was formerly before it on writ of error, on principles of general commercial law alone reversed the court below, and remanded the cause with directions for a new trial. In our former decision, the very point now in controversy was passed upon; and that decision is beyond the power and control of this or any other court. Surely the mere effort on the part of the plaintiff, at the second trial, to obtrude upon the consideration of the court a question wholly irrelevant and foreign to the issue, cannot confer Federal jurisdiction. It is obvious that the court below not only did not pass upon any Federal question, but in effect declined to do so, when, by the plaintiff's instructions, the effort was made to beget such a question. So, too, *Allen* v. *McVeigh* went from this court to the supreme court of the United States, and that court in declining jurisdiction, said: "All the court below decided was, that by the general principles of commercial law, if during the late civil war an endorser of a promissory note abandoned his residence in loyal territory and went to reside permanently within the Confederate lines before the note matured, a notice of protest left at his former residence in the loyal territory was not sufficient to charge him, if his change of residence was known, or by the exercise of reasonable diligence, might have been known to the holder of the note when it matured. Under the question raised by the charge as given, therefore we have no jurisdiction."

The case in hand cannot be distinguished from *McVeigh* v. *Bank of Old Dominion*, 26 Gratt., 785, S. C., 29 Gratt., 546, and *McVeigh* v. *Allen*, 29 Gratt., 588. Those cases settle the

law in this court, and the former decision of this court in this case, being on the very point in issue, is the law of this case.

The judgment of this court in *McVeigh* v. *Bank of Old Dominion, supra,* and in the other cases last above referred to, including the former judgment in this case as to the sufficiency of the notice of protest, is treated as if it rested and was intended to rest on the legal proposition that the holder and endorser were enemies. It is true that Anderson, J., in the first of these cases, speaks of them as standing in that relation to each other, but this was purely *obiter,* and it was so regarded by all the judges.

The legal relations subsisting between the parties, whether that of enemies or not, was not the point to be decided, not the point intended to be decided, and not the point actually decided. The court decided simply that on the facts proved, whatever might have been their legal effect under ordinary circumstances, the notice of dishonor was insufficient. And this it decided with the case of *Mathews* v. *McStea* pressed upon it, thereby demonstrating that its decision by no means turned upon the question of whether the parties stood to each other in the relation of enemies. The court simply decided that under the abnormal and extraordinary condition of things which existed at the maturity of the notes, and the exceptional conditions surrounding the endorser, all known to the holder, the notice of dishonor, which under ordinary circumstances would have been sufficient, was not sufficient; that due diligence varied with circumstances; that what was due diligence in time of peace, might cease to be such in a time of civil commotion and social revolution, and did actually cease to be such under the circumstances shown. For these reasons the judgment below must be affirmed, with costs to the defendant in error.

JUDGMENT AFFIRMED.