PAYNE v. THE C., R. I. & P. R. Co.

|   |   |
|---|---|
| 39 | 523 |
| 89 | 79 |
| 39 | 523 |
| 96 | 677 |
| 39 | 523 |
| 117 | 670 |
| 39 | 523 |
| e134 | 407 |
| 134 | 408 |

1. **Railroads:** CONTRIBUTORY NEGLIGENCE: SIGN AT A CROSSING. The negligence of a railroad company in failing to erect and keep a sign at a crossing, as required by statute, will not entitle one injured by a train at the crossing to recover damages therefor, if he himself is guilty of negligence contributing to the injury.

2. **Evidence:** WHEN IN CONFLICT WITH CONCEDED FACTS. Testimony which cannot be reconciled with the conceded and undisputed facts established by the evidence is not to be received as true, and upon it no conflict of evidence can be predicated. (*Artz v. The C., R. I. & P. R. Co.*, 34 Iowa, 153.)

3. **Railroads:** EFFECT OF ANOTHER'S NEGLIGENCE. In an action for damages, for injuries received at a railroad crossing by collision with a train, where it appeared that the team was driven by another and plaintiff was a passenger, he must rely upon the diligence of the driver for a recovery, and the driver's negligence will defeat his right.

*Appeal from Madison District Court.*

WEDNESDAY, OCTOBER 7.

ACTION to recover for personal injuries sustained at a highway crossing on defendant's road. The answer contains a general denial of the allegations of the petition, and alleges that the accident was occasioned by the gross negligence of the plaintiff and without fault of defendant. There was a jury trial, and a verdict and judgment for plaintiff for $10.000. Defendant appeals.

*Gatch, Wright & Runnells* and *Ruby & Murray*, for the appellant.

*Bryan & Seevers* and *Eli Wilkin,* for the appellee.

DAY, J.—Early in the morning of the 15th of February, 1872, the plaintiff, and three of his neighbors, William Ramsey, W. A. Lemon and James Blanchard, started in an open two horse wagon from Palmyra, in Warren county, to Des Moines, distant twenty miles, where they arrived at 11 o'clock, A. M. The team and wagon belonged to none of the parties,

but they were under the control of Blanchard. The parties remained in Des Moines four hours, and started for home at 3 o'clock, P.·M. driving by turns. The wagon was loaded with a barrel of oil, canned peaches and oysters, candy, wagon timber and iron. There was considerable bar iron extending beyond the end gate, which was let in upon the iron. Some loose scrap iron was loaded upon the bar iron. The road was frozen and rough, and the character of the loading was such as to make considerable noise. At Des Moines plaintiff drank two glasses of beer, and twice drank gin. On the way home, before the accident, all the parties drank gin twice, except Lemon who drank only once.

The situation of the railroad, the highways, and the adjacent objects will be understood by the accompanying plat. [*See opposite page.*]

The distance from the crossing to North River bridge is nine-tenths of a mile, and to the curve of the road seven-tenths of a mile. From Jack McGlothlin's house to the railroad the distance is 208 feet; and to the highway 378 feet. The grove at Jack McGlothlin's house is one hundred and fifty feet from north to south, and one hundred feet from east to west. The trees are four inches in diameter. The country north of the railroad and east of the highway, lying between widow McGlothlin's and North River bridge, is open prairie bottom, considerably lower than the wagon road, there being nothing to obstruct the view save fences, crops, and Jack McGlothlin's house and grove. The railroad track, from the crossing to the curve indicated on the plat, is straight. The plaintiff and his party reached Avon, six or seven miles from Des Moines, about 6½ o'clock P. M.

From the railroad crossing at Avon to the widow McGlothlin's the distance is about one-fourth of a mile, and from the widow McGlothlin's south to the crossing, where the accident occurred, the distance is about the same. From about Avon to the widow McGlothlin's, Ramsey, Blanchard and plaintiff walked. At the widow McGlothlin's plaintiff's companions helped him into the wagon, and he sat, or rather reclined, in the front end of the wagon, with his back toward the team.

Avon Sta.

Widow McGlathins.

WAGON ROAD FROM AVON.

WAGON     CROSSING     ROAD.

Grove

Jack McGlathins.

N.

W. — E.

S.

R.

R.

North Ri. Bridge

Blanchard and Ramsey seated themselves back of the middle of the wagon bed, with their backs to the front and against the coal oil barrel. Upon this barrel Lemon was seated driving. They started toward the crossing in a trot. About that time a witness, standing near the widow McGlothlin's, heard the whistle and saw the head-light of the train coming out of the timber, a mile away, toward the north-west. About the same time two parties, two hundred yards south of the crossing, saw the head-light of the train coming through North River bridge. They started to the crossing to see the train pass, and got within three or four rods of the crossing when the train was within about a quarter of a mile of the crossing. At this time they saw plaintiff and his party about two hundred yards off, approaching the crossing in a trot. They hallooed to them to stop, that the train was coming. The team checked to a walk near the crossing, the horses went upon the track and stopped. Almost at the same moment the collision occurred, killing the horses and severely injuring the plaintiff.

Prior to the accident, Lemon had lived within eight and one-half miles of this crossing, for nineteen years. The railroad had been in operation eight or ten months. After the railroad was put in operation, Lemon had traveled that highway a number of times, and had crossed the railroad at that point once or twice. The head-light was elevated eight and one-half feet above the railroad track, and Lemon was elevated about six feet above the highway.

These facts are undisputed. It is also clearly proved that the bell was rung for a considerable distance before reaching the crossing.

The defendant was negligent in not having erected a sign at the crossing as the statute requires. There was also some proof

1. RAILROADS: contributory negligence: sign at crossing.

tending to show that the train was running at an unusual rate of speed. But this negligence of defendant does not relieve plaintiff of the necessity of exercising ordinary care. That he exercised no care personally is clearly established. He was reclining with his back to the team, and it seems quite clear that he was in a state of intoxication. We need not determine whether he

could abandon himself to the care and watchfulness of the driver, Lemon, for it seems to us to be clearly established that Lemon did not exercise ordinary care and watchfulness in looking out for the train. The facts of the case bring it clearly within the principles of *Artz v. The Chicago, R. I. & P. R'y Co.*, 34 Iowa, 153. The head-light of the train was distinctly visible nine-tenths of a mile away, and when plaintiff and his party were almost a quarter of a mile from the crossing. During all the time that intervened until the accident, it remained visible, except the short time that it was obstructed by Jack McGlothlin's house and grove. Parties both north and south of the crossing saw the head-light almost a mile away. If Lemon had kept a reasonable lookout it cannot be possible but that he would have seen it too. It is true Lemon testifies that he was constantly watching for the train, and that he did not see it. But, as was said in the case of *Artz v. C., R. I. & P. R'y*, supra, " the conceded or non-disputed facts

2. EVIDENCE: when in conflict with conceded facts.

being true, this testimony cannot, in the very nature of things, be also true. It constitutes, therefore, no conflict." If there had been any conflict as to the facts above set out, the jury might have said these facts are not proved, and hence there is nothing inconsistent in the testimony of Lemon that he kept a careful lookout and could not see the train. But a jury could not, in the present case, say that Lemon looked and could not see, without squarely flying in the face of facts respecting which there is no conflict in the evidence.

The negligence of Lemon, upon whose diligence alone

3. RAILROADS: negligence.

plaintiff can rely for a recovery, is so great as to defeat plaintiff's right. See *Artz v. C., R. I. & P. R'y*, supra, and cases cited.

The verdict of the jury should have been set aside because in conflict with the law and evidence. It is unnecessary to consider the errors assigned upon the giving and refusing of instructions, and the admission of evidence.

REVERSED.