# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## N. Y., P. & N. R. R. Co. v. Cooper.

### April 4th, 1889.

1. NEGLIGENT INJURIES—*Concurrent negligence.*—Where, by the concurrent negligence of carrier and third person, passenger is injured, the negligence of former cannot be attributed to passenger so as to prevent him from recovering damages of third person.

2. IDEM—*Instructions.*—At trial of suit by passenger against carrier and third person, the court instructed the jury that if the injury was caused by the negligence of both defendants, the jury should find against both, but if by that of one, they should find against him, and refused to instruct that extraordinary care was required of carrier, and only ordinary care of third person ;

HELD :

   No error as against third person.

3. IDEM—*Case at bar.*—On a dark night, in a strong gale and flood tide, a tug, towing a barge laden with freight cars, left its wharf, when the lights of both slips of a ferry-boat not far off, whose course crossed the tug's and was known to it, showed its departure and destination. The tug's lights, except the stern light and a lantern on the cars, were hid to the ferry-boat, while its lights were thrown from its windows, and its port light was visible to the tug. The tug, attempting to cross the bows of the ferry-boat, relying on the signal whistle, the barge and the ferry-boat collided, killing plaintiff's intestate, a passenger on the latter ;

HELD :

   The navigators of the tug were guilty of negligence.

Error to judgment of circuit court of Norfolk county, rendered December 22d, 1887, in an action wherein Fanny L. Cooper's administrator was plaintiff, and the New York, Philadelphia and Norfolk railroad company and others were defendants. The verdict and judgment being for the plaintiff, the said railroad

company brought the case here upon writ of error and *supersedeas.* Opinion states the case.

*Sharp & Hughes*, for the plaintiff in error.

*R. C. Marshall*, and *Walke & Old*, for the defendant in error.

LACY, J., delivered the opinion of the court.

This case, so far as it is necessary to be stated, is as follows: The Portsmouth, a steam-tug, belonging to, and in the employment of, the plaintiff in error, with a railroad barge in tow, started from the Norfolk Southern railroad wharf in Berkley, a suburb of Norfolk, about the hour of 8:45 P. M., to go to the wharf of the plaintiff in error at the foot of Water street, in Norfolk city. Just above Norfolk city the Elizabeth river is divided into two branches, and the village of Berkley is situated on the point between the two branches; while the cities of Norfolk and Portsmouth, lying on each side of Elizabeth river, stretch upwards along the said river opposite to Berkley, and the said river constitutes what is called the inner harbor of Norfolk. The village of Berkley, at the head of the Norfolk harbor, lies between the upper ends of the cities of Norfolk and Portsmouth, separated from Norfolk by the eastern branch of Elizabeth river, and from Portsmouth by the southern branch, and it lies nearer to Portsmouth than to Norfolk. A ferry-boat called the "Manhasset," which is a small passenger steamboat, plies regularly at short fixed intervals across the Elizabeth river between the ferry-slip in Norfolk and the ferry-slip in Portsmouth. These slips not being opposite, the course of the ferry-boat is diagonally across the Elizabeth river. The two courses of the said boats, as indicated, crossed; and in respectively moving along the said courses on the night in question, which was dark and stormy, a gale blowing from the north against the bow of the tug and her tow, which was loaded heavily with three rows

of freight cars, on the port side of the ferry-boat, a collision occurred, by which the tow of the tug broke up the ferry-boat, carrying away the whole of the ladies' cabin and the wheelhouse on the port side, and killing the wife of the defendant in error. When the tug left her wharf in Berkley, she was two hundred and thirty-three yards from the Portsmouth ferry-slip diagonally across the southern branch, and in full view of it, as shown by its lights. The distance from Norfolk to Portsmouth is less than two-thirds of a mile, and it takes the ferry-boat between five and six minutes to make the whole distance, and when the collision occurred the ferry-boat, was about three-fourths of the way across from Norfolk to Portsmouth. The action was brought by the defendant in error against both the plaintiff in error and the owners of the ferry-boat, and judgment recovered against each in the sum of $4,750. The plaintiff in error applied for and obtained a writ of error from this court.

The first error assigned here is the action of the circuit court in giving the instruction asked for by the plaintiff, as set forth in bill of exceptions " A," in effect, that if the jury should believe from the evidence that the navigators of both the ferry-boat and the tug and barge were guilty of carelessness and negligence in so doing, and that the death of Mrs. Fanny L. Cooper, the wife of the defendant in error, was caused by the negligence of both those navigating the ferry-boat and tug and barge, both contributing thereto, then the jury should find against all the said defendants; but if they believed the injury was caused by the negligence of those only who navigated either the ferry-boat on the one hand, or the tug and barge on the other, then the verdict should be against the party so causing the injury. The objection to this instruction is that each boat is held to the same degree of diligence, whereas the defendant owner of the tug and tow claims that as the deceased, the said wife of the defendant in error here, was a passenger on the ferry-boat, that a contract relation existed on the part of the ferry-boat and the passenger, and called for extraordinary vigilance, aided by the highest skill,

and rendered the ferry-boat liable for the slightest negligence, whereas the tug and tow had no contract relation with the deceased, and were liable to exercise only ordinary care and vigilance, which is embodied in an instruction set forth in bill of exception " I," which was refused by the court. This contention of the plaintiff in error is based upon the idea that the negligence of the carrier is imputable to the passenger who has confided himself to its care; it being decided in the English case of *Thorogood* v. *Bryan*, 8 C. B. 115, where a passenger, in alighting from an omnibus, was thrown down and injured by the negligent management of another omnibus, that an action could not be maintained against the owner of the latter if the driver of the omnibus in which the passenger was riding, by the exercise of proper care and skill, might have avoided the accident which caused the injury; which was approved in the case of *Armstrong* v. *Railway Co.*, L. R. 10 Exch. 47, decided in 1875, (12 Moak, Eng. R. 508;) *Houfe* v. *Fulton*, 29 Wis. 296; *Prideaux* v. *Mineral Point*, 43 Wis. 513; *Lockhart* v. *Lichtenthaler*, 46 Pa. St. 151; *Payne* v. *Railroad Co.*, 39 Iowa, 523; *Carlisle* v. *Sheldon*, 38 Vt. 440,—and in some other cases.

Clark, J., said in the case of *Noyes* v. *Town of Boscawen*, Am. L. R. 27–117: "The rule that the negligence of the driver or manager of a vehicle is to be treated as the negligence of a passenger, in an action by the passenger against a third party, is put upon the ground that the passenger, in selecting the conveyance, has placed himself in the care of the driver, and hence must be taken to be in the same position; and the driver, as to third persons, is to be so far regarded as the agent or servant of the passenger as to make the latter chargeable with the driver's negligence, and hence not entitled to recover, although he may have been free from fault himself." The learned judge, proceeding, said: "In the absence of any relation of master and servant, or principal and agent, when each is independent of control by the other, why should a passenger be chargeable with the driver's negligence any more than the driver with the passen-

ger's negligence?" We think that the traveler should be held
to the exercise of reasonable care only in the selection of a
driver; and, being in no default in the choice of a conveyance,
and having no control over the management of the team, he
should not be held responsible for the negligence of the driver,
which he could not reasonably anticipate or prevent. Lopes, J.,
saying in the same case, upon a rehearing (*Thorogood* v. *Bryan*,
and *Armstrong* v. *Railway Co.*, having both been in the mean-
time overruled in the English court of appeals in the case of
*The Bernina*, L. R. 12 Prob. Div. 58): "A passenger in an
omnibus, whose injury is caused by the joint negligence of that
omnibus and another, may, in my opinion, maintain an action
either against the owner of the omnibus in which he was
carried, or the other omnibus, or both,"—and was clearly of
opinion to overrule *Thorogood* v. *Bryan*, as had been many
times held before that. *Robinson* v. *Railroad Co.*, 66 N. Y.
11; *Dyer* v. *Railway Co.*, 71 N. Y. 228; *Bennett* v. *Rail-
road Co.*, 36 N. J. Law, 225; *Railroad Co.* v. *Steinbrenner*,
47 N. J. Law, 161; *Transfer Co.* v. *Kelly*, 36 Ohio St. 86, 91;
*Railway Co.* v. *Shacklet*, 105 Ill. 364; *Turnpike Co.* v. *Stewart*,
2 Metc. (Ky.) 119; *Railroad Co.* v. *Case's Adm'r*, 9 Bush, 728;
*Thompkins* v. *Railroad Co.*, 4 Pac. Rep. 1165; *Little* v. *Hackett*,
116 U. S. 366. The doctrine of *Thorogood* v. *Bryan* being de-
clared to be unsound and in conflict with the principle that no
one should be denied a remedy for injuries sustained without
fault by him, or by a party under his control or direction; that
the relation of master and servant, and principal and agent does
not exist in cases where the passenger has no control over the
driver; that it is the right to control the conduct of the agent
which is the foundation of the doctrine that the master is to be
affected by the acts of his servant, and that no one is responsible
for the negligence of another, unless the latter is his servant or
agent. The doctrine of *Thorogood* v. *Bryan* was much criticised
by the English judges, and has been at last overruled there. It
was never generally followed in this country, and may be now

properly said to be altogether discarded, and rightly so. The passenger has no control over the driver of an omnibus, and certainly none over the conduct of a railway train or steamboat, on which he has taken passage. He has no control over the movements of either, and is in fact powerless to prevent the negligence of either. As is pointed out in the case of *The Bernina, supra,* if the passenger is so identified with the driver as to be deemed to be guilty of his negligence, and therefore to be deprived of a right of action, it must necessarily follow that, in addition to his rights being curtailed, his liabilities are correspondingly enlarged, and the result is that the passenger in an omnibus or other public conveyance is necessarily liable to third parties for the negligence of the driver, which could be maintained upon no sound principle. See note in Amer. Rep. 27, 129.

In the case of *Webster* v. *Hudson River Railroad Co.*, 38 N. Y. 260, which was a case of a passenger by one railroad suing another railroad for the consequences of a collision, it was held that, the negligence of the defendant, whereby plaintiff was injured, being established by evidence, and there being no pretense that the plaintiff was guilty of any personal negligence, the negligence of a third party contributing to the injuries furnishes no excuse for the negligence of the defendant, and no reason why it should not respond in damages. Hence, the refusal of the judge to charge that, if the jury should find that the injuries were in part caused by the negligence of a third party, the plaintiff could not recover from defendant, was not error.

And so in this case the refusal of the court to instruct the jury that one boat owed a greater degree of diligence to the passenger than the other was not error, because the negligence of a third party could not be held to be the contributory negligence of the passenger, so as to bar his right to recover; the question being, not the degree of vigilance due by the third party, but whether the defendant was guilty of negli-

gence which contributed to the injury; if the defendant was so negligent, then it was no defense for it that some other party was also guilty of negligence, unless that other party was such that its negligence could be imputed to the plaintiff by its being the servant or agent of the plaintiff, and under his control and direction which was not this case.

But it is argued that in the case of *Norfolk & Western Railroad Co.* v. *Burge,* 84 Va. 63, it was held that it was not error to refuse an instruction asked by the defendant because it failed to define the degree of care and caution required of the plaintiff to entitle him to recover. In that case the degree of care and caution or the contributing negligence of the plaintiff was of importance, because if he had contributed to the injury by his negligence he might be barred of recovery, and would be, unless the defendant, after discovering his negligence, had failed to use due diligence, notwithstanding, to prevent the injury. *Dun* v. *Railroad Co.,* 78 Va. 645. But in this case it was not asked that the court should instruct the jury as to negligence of the plaintiff—none being claimed against him; but the request was as to the negligence of the third party, the co-defendant steamboat, which was properly refused, for reasons stated already in what has gone before. *The Washington* v. *The Gregory,* 9 Wall. 513; *The Alabama* v. *The Game-Cock,* 92 U. S. 695; *Colegrove* v. *New York & New Haven Railroad Co.* and *New York and Harlem Railroad Co.,* 20 N. Y. 492; *Chapman* v. *New Haven Railroad Co.,* 19 N. Y. 341.

The next assignment of error is, that the court gave the instruction set forth in the defendant's bill of exceptions "B," which was, in effect, that if the jury believed the stated circumstances as set forth above; that if the tug with its tow left the Berkley wharf when the ferry-boat was not in its Portsmouth slip, to go to the Norfolk wharf, and to cross the course of the ferry-boat, then shortly due at Portsmouth, with the tide at a strong flood, in a dark and stormy night, and none of the color-lights of the tug or tow visible to the Manhassett, but that the same

were hid by the relative position of the tug and barge, and that
they could not be seen by any person on the ferry-boat, that
then those navigating the said tug and barge were in fault
and guilty of negligence. There can be no doubt whatever of
the propriety of this action of the court. The barge was an
immense object, with all its colored lights hidden from view
by its going backwards, and the tug, with its colored lights
on the opposite side of the barge, very much lower than the
barge, and the three rows of cars thereon, and altogether
out of sight, while a gale of wind and a flood tide impressed
their forces upon the ferry-boat. Under these circumstances
the tug and barge bore down upon the ferry-boat, they were
enveloped in total darkness except the stern light, a lantern
upon the cars on the barge, which was at best misleading;
and this not by an accident which resulted from the equal
obscurity of the ferry-boat, so that its locality in like manner
could not be discovered by the navigators of the tug and barge.
But with all the lights of the ferry-boat brightly burning, both
colored and white lights, and all her saloon windows throwing
a bright light all around her, the lights of her Portsmouth slip
close by showing her destination, and the lights of her Norfolk
slip, not far off, showing her departure, and her course being
well known (as well as their own obscurity) to the navigators of
the tug and barge, it was in every sense an imprudence to
attempt to cross her bow close upon her, or to rely upon the
signal of a whistle to deflect her course, against the contingency
of the gale, which was blowing against the tug, carrying back
the sound of any whistle the tug might sound, so that it might
not be heard in the ferry-boat. Whatever light the ferry-boat
showed the tug when she left her Norfolk slip, she was not then
either meeting or crossing, being too far off to do either, and
her exact course was known and well defined, and the tug should
have passed astern of her, especially when she was freighted
with passengers; but before the collision the ferry-boat showed
her port light, and the tug was bound to pass on her port side,

and that this was now impossible was the fault of the tug. The rule of navigation requires the steam-vessel, such as the tug, to carry a green light on the starboard side, and a red light on the port side, in each case obscured astern and showing only in front   The tug had these, but they were hidden completely by her tow.  The barge had these, but, as it was moving stern foremost, its lights were obscured also.   It was negligence thus to attempt to cross the course of the ferry-boat across her bow, when she was thus driven by wind and tide, at an unusual speed, in total ignorance of the proximity of her immense and invisible destroyer.   There was no error in the action of the court in giving this instruction.   Rev. St. U. S. § 4233, rules 4, 5, p. 816; *The Pennsylvania,* 19 Wall. 126, 135; *The Eleanora,* 17 Blatchf. 102; *Samuel H. Crawford,* 6 Fed. Rep. 906; *The Frank P. Lee,* 30 Fed. Rep. 277; *The Titan,* 23 Fed. Rep. 414; *Briggs* v. *Day,* 21 Fed. Rep. 727; *Marshall* v. *Tug Conroy and Barge "E,"* 2 Fed. Rep. 785; *The Howard,* 30 Fed. Rep. 281.

The next assignment of error which we will consider is the action of the court in refusing to set aside the verdict and grant a new trial to the defendant, as set forth in bill of exceptions "L."  We think there was no error in that action of the court. The evidence has been sufficiently set forth already, and the jury were the proper triers of the facts ; and the circuit court, under the circumstances of this case, rightly refused to set aside their verdict.  In this court this question is considered as upon a demurrer to the evidence by the plaintiff in error, and there is no principle upon which we can reverse the finding of the jury in this case.

As to negligence of the Manhassett, we have no concern with that.  A judgment was rendered against its owners because, as stated in argument, there was no special official lookout.   That boat has not appealed, and the verdict and judgment of the court below as to it are final ; and for reasons already stated the question as to its negligence cannot affect the plaintiff in error in a suit by one of the passengers in the ferry-boat against it.

This disposes of all of the questions raised and relied on in the argument here and in the petition. The same questions are stated in different forms, and under different heads, but we have considered and substantially disposed of them all in what we have already said, and it would be of no benefit to prolong this discussion further. We think, after a careful consideration of the whole case as presented here, that there is no error in the judgment complained of, and the same must be affirmed.

LEWIS, P., dissenting, said:

I dissent from the opinion of the court in this case. The record, in my opinion, discloses several errors for which the judgment should be reversed, but as the order to be entered here will be final, and there will be no further trial of the case, I will call attention to only one or two of them.

It was palpable error, I think, to instruct the jury, as the circuit court did, against the objection of the appellant, that they must find for the plaintiff if they believed from the evidence that the collision and consequent death of the plaintiff's intestate was caused by the negligence of the defendants' agents, without accompanying the instruction with any explanation as to what negligence is. The authorities all agree that negligence, when the facts are disputed, is a mixed question of law and fact. It includes two questions: (1) Whether a particular act has been performed or omitted; and (2) whether the performance or omission of this act was the breach of a legal duty. The latter is a pure question of law for the court; the former a pure question of fact for the jury. Shear. & R. Neg., sec. 11.

Therefore, to enable the jury in the present case to intelligently decide whether the defendants had been guilty of negligence, it was necessary for them to be told what legal duty the defendants, or either of them, owed to the plaintiff's intestate when the casualty occurred. A railroad company, like any other carrier who carries passengers by the agency of steam, is

not only bound to exercise the highest degree of care in safely transporting its passengers, but it must repel, by satisfactory proofs, every imputation of negligence by a passenger. But it owes no such duty to a stranger, and in no case does it owe to a stranger the duty of exercising anything more than ordinary care. *S. V. R. R. Co.* v. *Moose,* 83 Va. 827.

These are rules which the law prescribes, and in respect to which it is the duty of the court to instruct the jury in a case like the present, when instructions are asked upon the subject, in order that the jury may say whether, upon the facts of the particular case, negligence is established. The rule, that to questions of law the court responds, and to questions of fact the jury respond, is as old as the common law itself, and the court can no more, with propriety, surrender its functions to the jury than it can invade the province of the jury by taking from them and upon itself the decision of disputed questions of fact. Greenleaf says that where the question to be decided is a mixed one of law and fact, it is submitted to the jury, who are first instructed by the judge in the principles and rules of law by which they are to be governed in finding a verdict, and these instructions they are bound to follow. 1 Greenl. Ev. sec. 49. And in a note to the text it is said, by way of illustration of the rule, that "the judge is to inform the jury as to the degree of diligence, or care, or skill, which the law demands of the party, and what duty it devolves on him, and the jury are to find whether that duty has been done."

I had supposed this principle was too well settled to be questioned. It has been repeatedly recognized by this court, and is the universally accepted doctrine.

In *Dun* v. *S. and R. R. Co.,* 78 Va. 645, Judge Lacy, speaking for the court, and citing numerous cases, used this language: "When the facts are disputed, the question of negligence is a mixed question of law and fact. The jury must ascertain the facts, and *the judge must instruct them as to the rule of law,* which they are to apply to the facts as they may find them."

The rule is well expressed by Beach in his work on Contributory Negligence, at section 161, who says that as negligence is generally a mixed question of law and fact, "it devolves upon the court to say, as matter of law, what is negligence, and upon the jury to say, as matter of fact, in the light of the instructions from the bench, whether or not, in the particular case at bar, the facts as proven to their satisfaction warrant the imputation of negligence. In other words, the court tells the jury what negligence is, and the jury tells the court what the facts of the case show upon the question of negligence; the judge defines negligence in the charge, and the jury apply the definition to the facts in their verdict." And he very justly adds the remark that an uncounted multitude of authorities might be cited in support of this elementary proposition.

Nor has any authority been cited in support of the ruling of the circuit court, other than certain general expressions of some of the courts, in disapproving the doctrine of *Thorogood* v. *Bryan,* (8 C. B. 114) to the effect that a passenger in a public conveyance who, without fault on his part, is injured by the negligence of a third party contributing to the injury, may maintain an action against such person, notwithstanding the contributory negligence of those in charge of the conveyance in which he is being carried. I certainly do not controvert this proposition, but concede it to be sound. The case of *Thorogood* v. *Bryan,* was based upon a groundless fiction, and has been rightly, I think, overruled. The point there decided was that a passenger in a public omnibus, who is injured by the negligent management of another omnibus, cannot maintain an action against the owner of the latter, if the driver of the former, by the exercise of proper care and skill, might have avoided the accident; and the reason assigned was that the passenger, in selecting a vehicle, so identifies himself with the vehicle and its driver, that the negligence of the latter is to be considered the negligence of the passenger himself. But this reasoning is fallacious, as we know from every-day experience that the passenger, ordi-

narily, exercises no control over the driver, and has no means of preventing his negligence.

The doctrine has never been recognized in the admiralty courts, nor has it been generally followed in this country. On the contrary, it has been rejected by many courts of last resort, including the supreme court of the United States, in *Little* v. *Hackett,* 116 U. S. 366, and the case itself has been recently overruled in England. *The Bernina,* L. R. 12 Prob. Div. 58.

' I do not doubt, therefore, that the plaintiff in the present case may maintain an action against the appellant, if the negligence of the latter contributed to the death of the deceased. But the question at last comes back, *what is negligence?* And that must be decided in the manner I have indicated.

If the ruling of the circuit court be correct, then, indeed, not only must *Thorogood* v. *Bryan* be disregarded, but the law has been carried to the opposite extreme from what it was in England before that case was overruled ; that is to say, the appellant may not only be sued with the owners of the ferry-boat for the alleged negligent killing of the plaintiff's intestate, but it must stand upon the same footing with its co-defendants, notwithstanding the deceased, at the time of the accident, was a passenger on the ferry-boat, to whom, therefore, the owners of the ferry-boat owed the highest degree of care and skill, whereas the appellant owed her no higher duty than to exercise ordinary care in the management of its tug and barge. *N. Y. P. & N. R. R. Co.* v. *Kellam's Adm'r,* 83 Va. 851, 857.

But surely this is not the law. The same rule by which the liability of the appellant would have been determinable, if the action had been brought against it alone, must be the test of its liability in a joint action like the present. And why should it not be so? Upon what *principle can it be otherwise?*

It was suggested in the argument that there is no contribution between *tort feasors;* but this argument assumes as established the very fact in dispute; the question being, not one of contribution, but of original liability; in other words, whether or

not the appellant was negligent.   But how were the jury to determine that question, without being first told what legal duty the appellant owed the deceased ?   They were not presumed to know, without an instruction upon the point, and they ought not, therefore, to have been left in the dark, as they were, to determine it for themselves.   It was plainly the duty of the court to have instructed them as to the rule of law by which they were to be governed in finding a verdict.

The recent case of *N. & W. R. R. Co.* v. *Burge,* 84 Va. 63, is an authority in point.   In that case the injuries complained of were caused by a collision of a freight train of the defendant company with the plaintiff's truck, as he was driving from a wharf into a public street, in the city of Norfolk, from which the colliding train was being backed.   At the trial the defendant moved the court to instruct the jury that although they might believe from the evidence that its agents failed to give the customary signals of the approach of the train, yet that the plaintiff was not entitled to recover if he could have discovered the approach of the train in time to have avoided it. The plaintiff objected to this instruction, and moved the court to instruct the jury, in lieu thereof, that he was bound to use only such care and watchfulness as a man of ordinary prudence, under the circumstances, would have used, and that if he used such care he was not guilty of contributory negligence.

The court granted the motion, and instructed the jury accordingly, and this court affirmed the ruling of the trial court on the ground that, as the instruction which was refused did not define the degree of care which the plaintiff was bound to use to entitle him to recover, it was calculated to mislead the jury, whereas the instruction given, by correctly telling the jury what negligence in the particular case was, enabled them to properly apply the law to the facts of the case, and thus to arrive at a right conclusion, *i. e.,* to decide whether or not the plaintiff had been guilty of contributory negligence.

This ruling is in harmony with the principle laid down in

Dissenting Opinion.

*Dun* v. *Railroad Co.,* 78 Va., *supra,* and is, in my opinion, decisive of the present case. For why should it not be as much the duty of the court to define negligence when imputed to a defendant, as when imputed to a plaintiff? Are not its constituent elements in either case the same? Do not the jury need enlightenment on the question of law involved, as well in the one case as in the other? Can a person who happens to be a defendant, any more than one who is the plaintiff in an action, be guilty of negligence, without the breach of legal duty? And who but the court is to say what that legal duty is? I must confess I am unable to perceive any reason why the rule should not be so, nor am I aware of any authority which holds the contrary where the question has been raised. Indeed, but for the decision of a majority of the court in this case, I would say the proposition was axiomatic.

It is, therefore, to my mind too clear for argument that, unless all legal rules as to the degrees of negligence are to be abrogated altogether, the circuit court erred in giving the instruction above mentioned. And this error was intensified in its effect by the subsequent refusal of the court to give an instruction, on the motion of the appellant, to the effect that while the owners of the ferry-boat owed to the deceased the exercise of extraordinary vigilance, the appellant merely owed her the exercise of the ordinary care usually observed by prudent men in the business in which it was engaged.

This instruction correctly propounded the law, and ought to have been given. It is true that if the first part of it, namely, that part relating to the duty of those navigating the ferry-boat, had been offered separately, a refusal to give it might not have been error to the prejudice of the appellant, but the refusal to give the latter part was calculated to mislead, and doubtless did mislead the jury, and was therefore error, for which, in my opinion, the judgment should be reversed. The case is stronger than many cases in which it has been held that " though an instruction as asked is not wholly correct, yet if the general

refusal of it may mislead the jury, the court should either accompany the refusal with an explanation to the jury, or should give them an instruction stating the correct proposition." And the rule is certainly a very just one. See *Alex. Savings Inst'n* v. *McVeigh*, 84 Va. 41, and cases cited.

There are, besides these, other errors, I think, in the record, but I will not enter into a discussion of them. I have only called attention to the questions to which I have referred because of their importance in the every day practice of the courts of the Commonwealth. Many of the questions relating to the rules of navigation and the Federal statutes on the subject, which were argued before us, were considered by Judge Hughes, of the United States district court, in the case of *The Manhasset*, 34 Fed. Rep. 408, a case growing out of the same collision, and were decided adversely to the views of the appellee here. The opinion in that case contains a very full and able discussion of the questions before the court, and I will do nothing more in this connection than simply refer to that opinion. I have already said more than I intended.

I think the case was not properly submitted to the jury, and that the judgment ought therefore to be reversed, and the case remanded for a new trial.

JUDGMENT AFFIRMED.