Grace McBride, Administratrix of the Estate of B. McBride, Deceased, v. Des Moines City Railway Company, Appellant.

**Negligence:** INSTRUCTION. In an action for negligence the court 1 in its instructions should not call special attention to circumstances favorable to one party and omit all reference to those favorable to the other party.

**Same.** Where there is a conflict in the evidence on the question of 2 an exercise of care on the part of a motorman in endeavoring to check the speed of his car in time to have avoided an accident, it is error for the court by its instructions to withdraw that issue from the jury, although it is conclusively shown that he had sufficient time.

**Street railways:** NEGLIGENCE: EVIDENCE: ADMISSIBILITY. An ordi-3 nance providing that the apparatus of the fire department shall have the right of way upon the streets, where responding to an alarm of fire, is admissible in an action for the death of a fireman killed by the collision of a wagon on which he was riding with a street car, as bearing on the question of the exercise of care by the motorman; while an ordinance prior in time of enactment giving to street cars the right of way in matters of ordinary street traffic is inadmissible.

**Ordinances:** EFFECT OF RE-PUBLICATION. A mere re-publication of 4 ordinances in book form does not amount to a re-enactment so as to abrogate the rule that a later ordinance will, as to the subject matter covered thereby, control one previously enacted.

**Same:** CONSTRUCTION. An ordinance as to a specific subject mat-5 ter will control general provisions on the same subject which otherwise would prevail.

**Same:** INSTRUCTION. In construing the legal effect of an ordi-6 nance it is not error to set the ordinance out at length in an instruction.

**Negligence:** EVIDENCE. Rules purely for the government of mem-7 bers of a fire department are immaterial in an action against

a street car company for the negligent death of a member of the department.

**Imputed negligence.** Any negligence of the driver of a fire wagon which collided with a street car causing the death of a member of the department, who was riding on the rear of the wagon, cannot be imputed to the deceased; nor does the rule governing the negligence of one engaged with others in a common enterprise have any application.

**Admission or evidence:** PREJUDICE. Where evidence as to the distance within which a street car can be stopped is stricken, because based upon a supposed use of different appliances than those in use on the car in question and the jury is directed to give it no consideration, and subsequently the witness changes his evidence on the subject to correspond with that of a prior witness, it will be presumed that the jury followed the court's direction to disregard the stricken testimony, in the absence of a showing of prejudice.

**Instinct of self-preservation:** INSTRUCTION. In an action for negligence resulting in the death of plaintiff's intestate, refusal to instruct the jury to take into consideration the instinct of self-preservation in determining the question of deceased's contributory negligence is not erroneous, where there was no reference to the subject upon the trial.

*Appeal from Polk District Court.*— Hon. Hugh Brennan, Judge.

Tuesday, November 13, 1906.

Rehearing Denied, Monday, May 20, 1907.

Action to recover damages resulting to the estate of plaintiff's intestate by reason of his death, due to injuries received in a collision between a car operated by the defendant company and a hose wagon, belonging to the fire department of the city of Des Moines, on which the deceased, a member of the department, was riding. There was a verdict for plaintiff, and from the judgment rendered thereon defendant appeals.— *Reversed.*

*N. T. Guernsey,* for appellant.

*Thomas A. Cheshire,* for appellee.

McClain, C. J.— The facts appearing in the record which are essential to the determination of the questions of law raised on this appeal are as follows: Plaintiff's intestate was a member of the paid fire department of the city of Des Moines, and in response to a fire alarm, about half past ten in the morning, with eight other members of the department, he started on a hose wagon from the fire station on Eighth street going north. One Nagle was the driver of the wagon. Plaintiff's intestate rode in his proper place on a running board or step on the west side of the wagon, facing east and near the rear end. As the wagon approached the crossing of Grand avenue running east and west, on which there was a double track of defendant's railway, the driver saw a car coming from the west, and without checking the speed of the wagon drove on across the track on which the car was approaching. The car struck the rear wheel on the west side of the wagon, and deceased was violently thrown to the pavement and his skull was fractured. From this injury he died within a few hours.

I. After stating very elaborately and in great detail the claims of the parties as to the facts bearing upon the question of the negligence of the defendant's motorman, in charge of the car which collided with the hose wagon on which plaintiff's intestate was riding, and defining negligence, the court instructed the jury to consider " whether or not the motorman having charge of the running and operating of the car in question was negligent or not in not stopping or checking the speed of the car before the collision with the fire hose wagon occurred "; and he then proceeded to detail a variety of circumstances which the evidence for plaintiff tended to establish, such as the clearness and calmness of the day, the ringing of the bell on the hose wagon, and the distance at which such bell might be heard, the rate of speed of the wagon, etc., none of which

1. Negligence: instructions.

were controlling on the question of the motorman's negligence.   And he concluded the instruction with this sentence:

After carefully considering these facts, if they be facts, and all other facts and circumstances proved on the trial, if you believe from a preponderance of the evidence that the motorman by the use of the means at his command could have stopped the car, or checked the speed thereof, in time to have avoided the accident, and that he failed to do so, that would be negligence on his part; and his negligence, if he was so negligent, would be the negligence of the defendant, and your verdict should be for the plaintiff, unless you find the deceased, B. McBride, was negligent, and that his own negligence contributed to his injury in any degree, in which case you would find for the defendant.

The first objection urged to this instruction as a whole is that therein the court called to the attention of the jury the facts which the evidence tended to establish favorable to plaintiff's recovery, and omitted special reference to those relating to defendant's theory of the accident.   This objection we think was well taken.   An instruction was asked on behalf of defendant, calling attention to other circumstances which the evidence tended to establish, which should have been considered as bearing on the motorman's negligence, and which were favorable to defendant's contentions in the case.   It was clearly improper for the court to thus emphasize the circumstances from which negligence might be inferred, and omit any reference to circumstances tending to support the opposite inference.   Perhaps the court might properly have omitted to catalogue the circumstances which the testimony tended to establish bearing on the question of negligence, and simply have referred in a general way to the facts and circumstances proved on the trial.   But in suggesting to the jury that they should take into consideration some of the circumstances which were favorable to the plaintiff, and omitting reference to others favorable to defendant, he put the case unfairly to the jury.

Another serious objection to the instruction is that the portion thereof above set out withdraws from the jury the question whether the motorman was negligent in not stopping the car or checking the speed thereof in time to have avoided the accident. There could be no question under the evidence as to the ability of the motorman by the use of the means at his command to stop the car or check the speed thereof in time to have avoided the accident, if he had endeavored to do so a sufficient length of time before the accident occurred, nor was there any doubt that he failed to stop the car or check its speed so as to prevent the result of a collision; and the court specifically instructs the jury that this ability on the part of the motorman and his failure to act constituted negligence. The real question in the case was, not whether the motorman could have stopped the car, but whether he was negligent in not doing so; and this was a question for the jury, and not for the court. Had the evidence shown without controversy that the motorman, in the exercise of care, could and should have anticipated the collision long enough beforehand to enable him to stop the car or check its speed so as to avoid the accident, then the instruction might have been correct. But the facts were in dispute. There were circumstances supporting either conclusion, and the question of negligence should have been left to the jury.

It is no answer to this position to say that in the first part of the instruction the jury were told that they must consider whether or not the motorman was negligent in not stopping or checking the speed of the car. After this general statement, the court proceeded to enumerate a large number of circumstances indicating that the motorman was negligent, and then told the jury that if these circumstances were found to be established, and they believed from these and other circumstances proved on the trial that the motorman could have stopped the car, he was negligent. It was not the physical ability of the motorman to stop or check

the speed of the car that was in question, but his failure to use due care. The instructions as a whole are lengthy and intricate in their statements, and the one now specially under consideration is particularly obscure, and the bald statement at its conclusion that the motorman was negligent if he could have stopped or checked the speed of the car in time to avoid the accident, and failed to do so, may very well have been seized upon by the jury as the solution of the whole difficulty. We reach the conclusion that in the two respects pointed out the instruction was erroneous and misleading.

II.    Over the defendant's objection the court allowed the plaintiff to introduce in evidence a section of the city ordinance relating to the fire department as follows: "Sec.

3. STREET RAIL-
WAYS: negli-
gence: evi-
dence: admis-
sibility.

353. Fire Department Not to be Obstructed. Sec. 8. The engines, hose carriages, officers, men and apparatus of the fire department, shall have the right of way while going to and at any fire, and any person willfully obstructing the firemen in the performance of their duty shall be deemed guilty of a misdemeanor and be liable to punishment for such offense." And the court refused on plaintiff's objection to allow the defendant to introduce a section of the city ordinance relating to the operation by defendant of its street cars as follows: "Sec. 1304. Penalty. Sec. 8. The cars of said company shall be entitled to the track, and in all cases where any team or vehicle shall meet or be overtaken upon either of the street railways in said city, such team or vehicle shall give way to said car; nor shall any person willfully or maliciously obstruct, hinder, or interfere with any of said railway cars, by placing, driving, or stopping, or causing to be placed, or driven in a slow pace, or stopped, any team, vehicle or other obstacle in, upon, across, along, or near the tracks of said railway, or either of them, after being notified by the driver or conductor by the ringing of the car bell, or otherwise; and whoever shall willfully violate any of the provisions of this section shall, upon conviction thereof

before the police judge of said city, be fined in any sum not less than $5 nor more than $50." With reference to the section of the ordinances which was admitted in evidence, the court, after quoting it in an instruction, charged as follows:

You are instructed that, while the defendant had the right to operate its cars upon the streets of the city, it was bound to use ordinary care and caution in the operation thereof. And if you find from the evidence that the hose wagon in question was being driven upon said street in response to the alarm of fire, the driver of the hose wagon, the decedent riding upon such wagon, and the defendant are presumed to have been familiar with this ordinance; and in view of this ordinance the hose wagon was entitled to the right of way, and the conduct of the driver and the person riding upon the hose wagon, as well as the defendant, must be judged in the light of the conditions of this ordinance. And if you find that the defendant failed to use ordinary care and caution in stopping its car or checking the speed thereof, and that that was the proximate cause of the accident and the injury which resulted in the death of intestate, you will find for the plaintiff, unless you further find that intestate was himself guilty of negligence which contributed to his injury.

The section of the ordinance first quoted above was properly admitted as bearing on the question of the duty of the motorman to assume that the hose wagon would not be stopped for the purpose of allowing the car to pass by in front of it, but that on the other hand the driver of the hose wagon would proceed on the theory that he had the prior right at the crossing. While the ordinance does not require a higher degree of care on the part of the motorman with reference to the firemen on the hose wagon than with reference to any other person, it would charge the motorman with knowledge of a fact very material in determining whether he exercised the care required under the circumstances. The section of the ordinance relating to the operation of defend-

ant's cars and giving them the right of way as to teams or vehicles on the street was properly rejected, because it had no application to the case of a hose wagon belonging to the fire department. The fire department ordinance was later in enactment than the street car ordinance, and its provisions would control as to the specific subject-matter referred to therein.

It is argued that these two ordinances were subsequently included in the Revised Ordinances of the city and therefore were to be construed together, but it appears that the so-called Revision of the Ordinances of 1900, published in 1904, was not an enactment, but merely a republication, and we do not think that such a republication would affect the rule of construction otherwise applicable that the later ordinance would control the former as to any subject-matter covered by the subsequent enactment.

4. Ordinances: effect of re-publication.

However this may be, the specific provision of the ordinance as to the engines and carriages of the fire department constitute exceptions to the general provisions relating to teams and vehicles. That the provisions of a statute or ordinance as to a specific subject-matter will prevail over general provisions which, but for the specific provision on the same subject, would have covered the subject-matter of the latter, is a proposition too elementary to require discussion. In *Christy v. Des Moines City R. Co.*, 126 Iowa, 428, it was held that the ordinances of the city regulating the conduct of the employés of the street railway company in operating its road were properly rejected when offered in evidence; but in that case the question was whether plaintiff, seeking to recover for personal injuries received by reason of negligence of the street car employés, could establish the measure of their duty by showing the provisions of the ordinances on the subject, and all that was held was that the duties imposed by the ordinances were not different from those imposed by law, and therefore

5. Ordinances: construction.

the provisions of the ordinances were wholly immaterial.
We are satisfied with the rulings of the court admitting the
section of the ordinances relating to the fire department and
excluding the section relating to the operation of street cars
with reference to teams and vehicles in general.

It is objected that the court should have construed the
section of the fire department ordinance, and not submitted
it to the jury for their construction. But this, we think,
6. SAME: instruc-    is just what the court did. Perhaps it was
tion.                unnecessary to set out the section of the ordi-
nance in the instruction, but the court proceeded to tell the
jury what was the effect of the ordinance, and there could
have been no prejudicial error in setting out its language.

In this connection may be noticed the ruling of the court
sustaining an objection on behalf of the plaintiff to the offer
in evidence of the rules of the fire department offered by the
7. NEGLIGENCE:       defendant. These rules were intended for the
evidence.            guidance of members of the department, and
were issued only to them. They were not issued for the pur-
pose of advising the public what the conduct of the firemen
would be under any particular emergency, and the public
had no reason to know what they were or to rely upon them.
The motorman of the defendant cannot be assumed to have
acted with reference to or in reliance on any such rules, for
he had no reason to know of their existence, and there is
nothing to indicate that he did know what they were, or rely
upon them in any way. These rules could not, therefore,
have had any bearing on the question whether the motorman
was negligent. The bearing of the rules on the conduct of
the deceased and of the driver of the hose wagon will here-
after be considered.

III.    The jurors were instructed that, in determining
whether the deceased was negligent in any way contributing
8. IMPUTED NEG-      to his injuries, so as to defeat recovery, they
LIGENCE.             need not consider the action of the driver of
the team drawing the hose wagon, as his action and conduct

could not be imputed to the deceased. The evidence shows that deceased was near the rear end of the hose wagon, standing on a running board and holding onto a railing provided for the purpose, while the driver was on the front seat, guiding the horses and urging them onward in response to the fire call, and it is quite apparent that deceased was in no way responsible for the action of the driver, unless, from the mere fact that the deceased was being transported on the hose wagon managed by the driver, the conduct of the latter was to be imputed to the former. And counsel for appellant concede this to be the situation; for, in a requested instruction, the rule is announced that, if the proximate cause of the collision was the negligence of the driver, and such collision would not have occurred, had the driver exercised reasonable and ordinary care, then the plaintiff could not recover. The bald question is thus presented whether the negligence of the driver of the hose wagon, if there were any negligence on his part contributing in any way to the injury, should be imputed to deceased and defeat plaintiff's recovery. This court has, in several cases, refused to countenance the doctrine of imputed negligence. *Nesbit v. Town of Garner,* 75 Iowa, 314; *Wymore v. Mahaska County,* 78 Iowa, 396; *Larkin v. Burlington, C. R. & N. R. Co.,* 85 Iowa, 492; *Bailey v. Centerville,* 115 Iowa, 271; *Willfong v. Omaha & St. L. R. Co.,* 116 Iowa, 548.

It is argued however, that the case before us falls within the rule of a class of cases in which imputed negligence or something akin to it is recognized, and that these cases are not only not expressly overruled, but are regarded as still announcing the law of this State. The leading case of this group is *Payne v. Chicago, R. I. & P. R. Co.,* 39 Iowa, 523, which, with other cases following it, is commented on in *Nesbit v. Town of Garner, supra.* The ground of the decision in the *Payne* case is very briefly and inadequately stated, and that case has been cited in other courts (see *Dean v. Pennsylvania R. Co.,* 129 Pa. 514 (18 Atl. 718, 6 L. R.

A. 143, 15 Am. St. Rep. 733); *New York, P. & N. R. Co. v. Cooper,* 85 Va. 939 (9 S. E. 321); *Noyes v. Boscawen,* 64 N. H. 361 (10 Atl. 690, 10 Am. St. Rep. 410) as supporting the general rule of imputed negligence announced in *Thorogood v. Bryan,* 8 C. B. 114, which has been expressly repudiated in practically all the courts of last resort in this country in which the question has been considered. See *Little v. Hackett,* 116 U. S. 366 (6 Sup. Ct. 391, 29 L. Ed. 652); *Union Pacific R. Co. v. Lapsley,* 51 Fed. 174 (2 C. C. A. 149, 16 L. R. A. 800); *Kowalski v. Chicago & G. W. R. Co.* (C. C.) 84 Fed. 586; *Robinson v. New York C. & H. R. R. Co.,* 66 N. Y. 11 (23 Am. Rep. 1), and note; 1 Thompson, Negligence (2d Ed.) sections 77, 298, 497. But in the *Nesbit* case this court explains the *Payne* case and other cases like it as announcing the general rule that, where several persons are engaged in a common enterprise in the carrying on of which each is participating, the negligence of one of them may be imputed to the others.

It is the contention of counsel for appellant in this case that the common enterprise doctrine should be applied. We are satisfied, however, that the facts do not afford the slightest occasion for applying or even discussing the common enterprise rule. The deceased was not riding on the hose wagon in the prosecution of any common enterprise in which he and the other members of the fire department had voluntarily engaged, but in the pursuance of his individual duty as a member of the fire department and in that capacity a servant of the city. He had nothing to do with the selection of the driver, and he had no control over his acts. Under such circumstances it has been frequently held by other courts that there is no relation of common enterprise which would justify the imputation to the deceased of any negligence on the part of the driver of the hose wagon. See the following cases, which seem to be exactly in point: *Geary v. Metropolitan St. R. Co.,* 82 N. Y. Sup. 1016; *Bailey v. Jourdon,* 46 N. Y. Sup. 299; *Elyton Land Co. v.*

*Mingea,* 89 Ala. 521 (7. South. 666) ; *Birmingham R. &
E. L. Co. v. Baker,* 132 Ala. 507 (31 South. 618) ; *Houston
City R. Co. v. Reichart* (Tex. Civ. App.), 27 S. W. 918, on
appeal 87 Tex. 539 (29 S. W. 1040).

The rules of the fire department offered in evidence
had no bearing on this question. So far as appears from
the record, the sections relate to the conduct of the driver
and the captain or assistant chief, and they do not purport
to authorize another fireman riding on the hose wagon to
exercise any control over the driver. So far as they affect
the conduct of the driver, even if admissible for the purpose
of showing his negligence, they would not be material as
affecting the deceased, in view of the conclusion just indi-
cated that negligence of the driver was not imputable in
any way to the deceased. The question as to the alleged
negligence of the deceased himself in not looking out for the
approaching car or endeavoring to avoid injury to himself
from the collision was submitted to the jury in an instruc-
tion as to which no complaint is made. Counsel does com-
plain of the refusal to give a specific instruction on this sub-
ject, but the instruction given sufficiently covered the one
asked. In another requested instruction the doctrine of the
last fair chance was invoked, on the theory that the evidence
tended to show that the driver saw the car approaching in
time to have avoided the injury, notwithstanding the negli-
gence of the motorman in failing to stop or check the speed
of his car; but such doctrine has no application here, as
negligence of the driver would not be the negligence of
deceased. We find no error in the record with reference to
the question as to the exercise of reasonable care on the part
of the deceased to avoid the injury.

IV. An instruction was refused in which the general
rule was stated that the testimony of a witness in answer to
hypothetical questions based upon the assumption of matters
of fact is of no value whatever, if any one of the material
facts assumed is not sustained by the evidence; but we

think that there was no occasion under the record for the giving of such an instruction.    The only expert whose testimony was allowed to go to the jury was a motorman who had previously been in the employ of defendant, and the hypothetical questions propounded to him related to the distance within which a car could have been stopped with certain appliances and under certain conditions.    Counsel does not call our attention to any conflict in the evidence as to the appliances or conditions referred to in the questions, nor does he claim that there was a want of evidence as to such appliances or conditions.    There was no occasion, therefore, to instruct the jury on this subject.

Another witness, who had been at one time a motorman, was asked with reference to the distance within which a car could be stopped with the use of a different kind of controller than that in use on the car which collided with the hose wagon; but subsequently, on the request of counsel for plaintiff, who had introduced this witness, his testimony was stricken out, and in an instruction the jury were directed to disregard it.    The circumstances attending the offer of this evidence, as appears from the record, were somewhat peculiar, and, if counsel for plaintiff had in fact got before the jury the opinion of this witness on a matter on which there was no other evidence, we might, perhaps, feel inclined to say that prejudice was not removed by the action of the court in striking it out and directing the jury to give it no consideration.    But, as a matter of fact, after the witness had fixed a shorter distance than that fixed by the expert witness previously testifying as to the time within which the car might have been stopped, he changed his testimony so that it substantially accorded with that of the previous witness and furnished corroboration only, and not new or different testimony on that point. Under such circumstances we cannot think that there was any error resulting from the admission of the testimony of the witness which was not fully cured by the action of the court.

9. Admission of evidence: prejudice.

Neither before nor after the testimony of this witness was stricken out was there any real conflict in the evidence on the subject. At least, counsel does not call attention to any such conflict, nor indicate in any way how prejudice could have resulted, and, in the absence of any suggestions that there could have been prejudice not removed by the action of the court, we are not called upon to interfere; for we must assume, in the absence of anything in the record to lead to a contrary conclusion, that the jury accepted and followed the directions of the court in the matter.

V. The refusal of the court to give an instruction to the effect that, in determining whether plaintiff's intestate was guilty of contributory negligence, the jury should not, under the facts and circumstances disclosed by the evidence, take into account or consideration the instinct of self-preservation, is complained of. But, as there is nothing in the record to indicate that the attention of the jury was in any way called to that doctrine, the refusal of the instruction was certainly not error. Plaintiff had not in any way suggested to the jury that there was any presumption that deceased was acting in accordance with such an instinct, and we are not to assume that the rule of law on the subject was known to the jury, or would be improperly applied by them at their own instance without their attention being called to it.

10. INSTINCT OF SELF-PRESERVATION: instruction.

For the errors pointed out in the first division of this opinion, the judgment is *reversed*.